Bogie vs. Bogie.

## BOGIE VS. BOGIE.

### *Delivery of Deed.*

1. There is no set ritual of *delivery* in the case of a deed; but where it is executed, and the minds of the parties to it meet, expressly or tacitly,

in the purpose to give it *present effect*, it is validly delivered: and such meeting of minds may be gathered from acts or signs, words or silence, according to circumstances.

2. A magistrate, after consultation with all the parties, and in their presence, drew a deed from A. to B., a mortgage back from B. to A., and a personal contract between them, which was the consideration of the deed, all parties understanding that the papers were to be presently executed, and to take effect at once; and the instruments were all signed, witnessed and acknowledged in his presence; and he executed the certificate of acknowledgment, and then, the parties being still present, handed to each the papers running to him, saying, "I suppose these belong to you, A., and these to you, B." No specific direction was given by either party at the time this was done; but there was no dissent or comment from either, and each took in silence the papers so handed to him. *Held*, that there was a valid *delivery* of the deed.

3. If the grantor in such deed soon after desired to revoke it, and in some way got possession of it, and if such execution and delivery of it were made merely for the fraudulent purpose on his part of inducing a third party to execute a certain other conveyance, and with a secret intent to recall his own deed when this object was secured, these facts do not alter the effect of the transaction as a valid conveyance of the land.

APPEAL from the Circuit Court for *Jefferson* County.

Action to cancel a deed executed by plaintiff and wife, November 21, 1872, purporting to convey land to defendant. The complaint avers that plaintiff, on the day named, owned the land, and that his wife, Amy Bogie, at the same time owned another tract, containing forty acres, on which was the house then occupied by plaintiff and wife as a homestead; that the two tracts constituted a farm; that at the time named plaintiff's wife was very sick and not likely to live; that defendant, who is a son of plaintiff, resided with them; that plaintiff and wife concluded to make deeds of both these tracts of land to defendant, taking back a life lease from defendant to plaintiff's wife, of her forty acres, to secure her support, and defendant's note for $150 payable on demand, and a contract on defendant's part to support plaintiff during life, and, at his (plaintiff's) death, pay $700 to defendant's brother and two sisters; that

the two deeds (the one here in question and that executed by Amy Bogie as a conveyance of her forty acres), and also said contract and note, were all executed in due form, but not delivered, nor was it intended that they should be delivered during the lifetime of the grantors; that the plaintiff's wife recovered; and that on the 15th of February following defendant took the deeds from plaintiff's chest, without authority, and put them on record, and has since refused to reconvey the land to plaintiff.

Defendant, by his answer, admits the making of the deed and contract, and the taking and recording of the deeds, but alleges that they were delivered to him on the day of their execution; that his contract to support the plaintiff was delivered to the latter at the same time; and that defendant went into possession of the land, and carried on the farm the following spring and summer, and furnished plaintiff with his support, and in all things performed the contract on his part.

The circuit court found that the deed in question was never delivered to the defendant; and held that it was void, and that plaintiff was entitled to have it canceled. Judgment accordingly; from which defendant appealed.

*L. B. Caswell,* for appellant, reviewed the evidence at some length, arguing that the fact of the delivery was clearly established by a preponderance of evidence, and citing *Souverbye v. Arden,* 1 Johns. Ch., 240, 329, 450; 6 Conn., 111; *Doe v. Knight,* 5 Barn. & Cress., 671; *Cooper v. Jackson,* 4 Wis., 550; *Moore v. Hazelton,* 9 Allen, 102; *Stevens v. Hatch,* 6 Minn., 64; *Levister v. Hilliard,* 4 Jones Eq. (N. C.), 12; *Bensley v. Atwill,* 12 Cal., 231; *McLure v. Calclough,* 17 Ala., 89; *Harris v. Saunders,* 2 Strobh. Eq., 370; *Brown v. Brown,* 1 W. & M., 325; *Clavering v. Clavering,* 2 Vern., 473; *Wheelwright v. Wheelwright,* 2 Mass., 447; *Shelton's Case,* Cro. Eliz., 7; *Boughton v. Boughton,* 1 Atk., 625; 1 Ves., 314; 15 Wend., 545; 4 Kent's Com., 455; 32 Barb., 469; *McLean v. Button,* 19 id., 450; *Benson v. Woolverton,* 2 McCarter (N. J.), 158;

*Bryan v. Wash*, 2 Gil., 557; *Wall v. Wall*, 30 Miss. (1 George), 91; *Warren v. Swett*, 11 Foster (N. H.), 332.   He also insisted that even if the deed had never been delivered, the defendant had a vested right in the settlement, by plaintiff's own showing, and the court erred in holding the deed void (*Goodell v. Pierce*, 2 Hill, 659; *Nattbeck v. Wilkes*, 4 Abb., 315); and that such deed was irrevocable.   1 John. Ch., 240, 329, 261; *Verplanck v. Story*, 12 id., 536; *Villers v. Beaumont*, 1 Vern., 100; *Bale v. Newton*, id., 464.

*D. C. Weymouth*, for respondent:

The question of delivery of the deed is one of fact (*Lindsay v. Lindsay*, 11 Vt., 621); and unless there is a great preponderance of evidence against it, the finding of the court will not be disturbed.   *Evans v. Bennett*, 7 Wis., 404; *Margaresson v. Saxton*, 1 Younge & Coll., 532; *Barnes v. Stewart*, id., 139.   As to the necessity of delivery, counsel cited *Grendit v. Baker*, Yelv., 7; *Carr v. Hoxie*, 5 Mason, 60; *Chamberlain v. Stanton*, Cro. Eliz., 122; 1 Shepherd's Touch., 58; *Cooper v. Jackson*, 4 Wis., 537; *Tisher v. Beckwith*, 30 id., 55; *Mills v. Gore*, 20 Pick., 28; and he contended that, the defendant having admitted taking the deed from the possession of the plaintiff, the presumption would be that plaintiff's possession was rightful, and the burden of proof was upon defendant to show a previous delivery to himself (*Woodman v. Coolbroth*, 7 Greenl., 181; *Hatch v. Haskins*, 5 Shep., 391; *Jackson v. Rowland*, 6 Wend., 666); and that defendant had failed to make such proof.   As to family settlements, he cited *Cecil v. Butcher*, 2 Jac. & Walk., 565; *Maynard v. Maynard*, 10 Mass., 456.

*Ed. S. Bragg*, of counsel, for respondent, as to the necessity of delivery, and as to what constitutes a valid delivery, cited 2 Greenl. Ev., 297; 3 Washb. R. P., 255; *Somers v. Pumphrey*, 24 Ind., 240; *Dearmond v. Dearmond*, 10 id., 191; Comyn's Dig., title "Fait, A., 4;" *Mills v. Gore*, 20 Pick., 36; and he argued, from a review of the testimony, that the objective point of the whole transaction between the parties was the sep-

Bogie vs. Bogie.

:arate estate of plaintiff's wife, the stepmother of defendant, which the plaintiff wished to retain in his own family after her decease; that he executed the deed in suit as an inducement to her to deed her own property; that her deed was a substitute for a will, to take effect only after her death, and was revocable, being in the nature of a *donatio causa mortis* (*Walter v. Dodge*, 2 Swans., 106, and cases in note); and that plaintiff did not intend to convey to his son, the defendant, any present interest in his own property.

RYAN, C. J. The sole question presented in this case is, whether there was a valid delivery of the respondent's conveyance to the appellant. This appeal does not involve the delivery of Amy Bogie's deed.

Both conveyances were part of a family arrangement, resulting in a family quarrel. These were discussed by counsel on both sides. But with the wisdom of the arrangement, or the merits of the quarrel, we have no concern on this appeal.

On the facts and circumstances involved in the question of delivery, the parties themselves, who are father and son, and several relatives by blood and marriage, were examined as witnesses. Their evidence, taken together, is a confusion of irreconcilable statements. We have examined it carefully; and, while we think that the preponderance of it is in favor of the delivery of the deed, we feel that we should not be safe in drawing from it a conclusion strong enough to overcome the finding of the court below. We decline to comment on it. Had the case rested there, we should have let the judgment below stand; and perhaps have indulged our personal feelings by leaving the parties as they were before this transaction.

But there is one witness who appears not to be related to the parties, not involved in their quarrel, not in sympathy with either. This is the justice of the peace who drew the deeds and took the acknowledgment of them. His evidence seems candid, intelligent and reliable, disinterested and unprejudiced,

and stands out in bold and bright relief from the medley of confusion and contradiction of the other evidence, which rather perplexes than instructs us on the facts. We think that his account is rather more confirmed than opposed by the other witnesses. And, after patient examination, we have concluded to rely on his evidence as the safest and truest account of the transaction.

This witness, Mark Curtis, was called in to draw papers for the parties. He was told to bring a life lease, and to be prepared to draw a will. He accordingly went, and seems to have taken with him blanks for conveyances. He saw the parties, with members of their family and other friends present. He conversed with them about the papers which they wanted. He understood from them that the respondent and his wife wanted to make some arrangement by which they could retire from active business and be secured in their maintenance for the rest of their days. After debate, they all agreed to that. A will and a deed to the appellant were both suggested. He advised a deed, and gave his reason : if they should have trouble, a deed could not be overturned as a will. A deed was chosen from the father to the son. A life lease, a mortgage and a personal contract from the son to the father were discussed, and a contract agreed on. The witness understood them to be entirely harmonious. When he had learned what they wanted, he drew the papers, including the deed in question from the respondent and his wife to the appellant, and a contract of the appellant with the respondent, by which the appellant, for the expressed consideration of the conveyance, bound himself to support the respondent for life, and to pay certain sums to other children of the respondent, after the latter's death. He also drew a conveyance from the respondent's wife, Amy Bogie, to the appellant, of land held in her own right, and a life lease of it back from the appellant to Mrs. Bogie. He says that he drew the manuscript papers first, so that if the parties should not agree upon them, he should not spoil the blank deeds.

He read the papers aloud, and very faithfully explained their effect. The only mistake he seems to have made was in his belief that the appellant's personal · contract would bind the land, and it does not quite appear that he expressed it. This was all deliberate, and took nearly or quite a day. The witness testifies to many other details, which leave no room for doubt, his evidence being credited, that all the parties understood properly that the conveyances were to be presently executed and delivered, and to take effect at once. Mrs. Bogie was sick in another room, when the witness communicated with her. The other parties appear to have been present all the time, in the room where he drew the papers. These were finally all signed, witnessed and acknowledged. The personal contract was executed and acknowledged by the respondent as well as by the appellant. The witness then wrote the certificates of acknowledgment, the papers lying on a table before him. Then, the parties being both present with their friends, he handed the deed in question, with other papers running to him, to the appellant, and the personal contract, with other papers, to the respondent, saying to them as he did so: "I suppose these belong to you, *John*, and these to you *Mr. Bogie*; you want to take care of them." No one directed him to do so. But he did it, according to his habit in such cases, without dissent or comment from either of the parties. And each of them took the papers so handed to him, apparently in silence; that closing the witness's connection with the transaction and his knowledge of it.

These are the facts which we find established by the evidence, on which the question of delivery rests. It was urged upon us that, in the circumstances of this case, the *onus probandi* was on the appellant. That is, we think, immaterial; the evidence satisfying us affirmatively that there was a valid delivery of the conveyance.

It was urged upon us that we must find a present consent of the respondent to the delivery. Undoubtedly. In *Welch v.*

*Sackett*, 12 Wis., 282, speaking of this question of delivery, Chief Justice DIXON well said: "Like every other contract, there must be a meeting of the minds of the contracting parties, the one to sell and convey, and the other to purchase and receive, before the agreement is consummated."

Was there here such a meeting of the minds of the grantor and the grantee, the respondent and the appellant? "As a deed may be delivered to the party without words, so may a deed be delivered by words without any act of delivery." 1 Coke Litt., 36 a. "If both parties be present, and the usual formalities of execution take place, and the contract is to all appearance consummated without any conditions or qualifications annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor." 4 Kent, 455.

These elementary principles would control this case. But the conditions of this case are expressly passed upon, and a valid delivery held, in *Warren v. Swett*, 11 Foster, 332. In that case, the person who drew and took the acknowledgment of mutual deeds between the parties, with a small money consideration for one, previously paid, testified that the deeds were read to them, and they signed and acknowledged them; that he folded them up, and handed them to each. One put his in his pocket; the other appears to have laid his on a table. On an instant dispute about paying the expense of the papers, the former put the deed and consideration he had received before the latter, took up his own conveyance, and went away. And, in a careful opinion, the court held this to be a good delivery.

We might multiply authorities, English and American, on the general principles governing such cases. We cite only such as happen to be before us: *Doe v. Knight*, 5 Barn. & Cress., 671; 8 Dow. & Ryl., 348; *Souverbye v. Arden*, 1 Johns. Ch., 240; *Verplank v. Sterry*, 12 id., 536; *Scrugham v. Wood*, 15 Wend., 545; *Porter v. Cole*, 4 Greenl., 25; *Jones v. Jones*, 6 Conn., 111; *Blight v. Schenck*, 12 Barr, 285; *Crawford v. Bertholf*, Saxton's

Ch., 458. See also, in this court, *Cooper v. Jackson*, 4 Wis., 537; *Welch v. Sackett*, 12 id., 270; and other cases.

These authorities establish that there is no set ritual of delivery; that when a deed is executed, and the minds of the parties to it meet, expressly or tacitly, in the purpose to give it present effect, the deed is validly delivered; and that such meeting of minds may be gathered from acts or signs, words or silence, in multitudinous variety of circumstance.

Here was the purpose to execute the deed and the contract which was the consideration for it; the drawing of the deed and contract to fulfill the purpose; the execution and acknowledgment of the deed and contract; the silent assent of each party to the delivery by the magistrate; the ratification by each party of the delivery of the proper paper to the other, by his receipt of the corresponding paper, which was the consideration of his own; all being parts of one uninterrupted transaction; both parties being all the time present and privy. All these things concur to fix the meeting of the minds of the parties beyond rational doubt. No mere words of assent could outweigh this silent consent, this conscious delivery.

Some stress was laid, for the respondent, on the statement that the conveyance from the respondent to the appellant embraced thirty acres of land more than he intended, and that the respondent said something to the effect that it might go, and that he could rectify it, or it could be fixed, afterward. Mr. Curtis does not mention this, nor does he contradict it. But the fact, if fact it be, has no sufficient weight to rebut, or even directly tend to rebut, the evidence of assent to the deed and delivery of it. This was before the quarrel, when the witness says that all was harmonious between the parties. If mistake there were in the deed as drawn, the father might well rely on the son, for whom he was providing, to correct it at leisure.

Great stress was also laid upon the sudden and subsequent conduct of the parties. Immediate strife for the possession of the deed in question followed, and it came in some way into

the respondent's hands. It is difficult to understand this; fortunately it is not necessary. It is suggested by the respondent's own counsel, that he might have been playing a part to lead his wife on to a conveyance of her land, and, the part played, sought to undo, or seem not to have done, what he had done in that design. But he is too late. It may be that he had a mental reservation in his assent to the delivery. If so, it was a fraud which cannot avail him. He cannot revoke his deed, though he may have intended to revoke it. And however difficult of explanation his subsequent conduct may be, however soon and sore he may have repented of what he had done, nothing in his subsequent conduct — nothing in the subsequent conduct of both parties, even in concert, far less in controversy — can avail against the foregoing delivery. This is almost too plain to call for authority. *Parker v. Kane*, 4 Wis., 1; *Hilmert v. Christian*, 29 id., 104. We shall therefore not embarrass the case by any consideration of the after conduct of the parties or the conflicting accounts of it.

We were strongly impressed with these views during the argument at bar. We have read with much interest the ingenious and subtle argument since submitted for the respondent; but it failed to shake our views of the fact or the law.

The judgment of the court below must be reversed, and the cause remanded for judgment in conformity with this opinion.

*By the Court.* — So ordered.