WILLIAM WALLS

*v.*

HARRIET RITTER *et al.*

Opinion filed June 17, 1899—Rehearing denied October 6, 1899.

1. DEEDS—*grantor's intention to divest himself of title is essential to a delivery.* Whatever method of delivery may be adopted by the grantor, it must appear that he intended to divest himself of title and of all control over the deed.

2. SAME—*what evidence does not show symbolical delivery.* The mere fact that the grantee in a deed produces the key to the grantor's safety deposit box after the latter's death, in which box is found a sealed envelope containing the grantor's will and several deeds, including the one in question, does not prove a symbolical delivery of the latter.

3. EVIDENCE—*when evidence of delivery of key to safety deposit box is incompetent.* One resisting partition by heirs on the ground that a portion of the land had been deeded to him, cannot testify in his own behalf that the deceased grantor delivered to him the key to his safety deposit box in which the deed was kept, some two months before the grantor's death, and that it had remained in his exclusive possession thereafter until the box was opened.

4. ESTOPPEL—*an estoppel in pais can be invoked only by one relying thereon.* An estoppel *in pais* can only be invoked by one who has relied upon the statements or declarations made to him, and, in consequence thereof, has changed his condition with reference to the subject matter of such statements.

APPEAL from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This was a bill in equity by appellees, against appellant and others, for the partition of the estate of George M. Sims, who died testate November 4, 1897, but providing in his will for the division of his personal property only. An answer was filed by appellant, William Walls, a grandson of George M. Sims, denying the right of the complainants to a partition of a certain eighty-acre tract described in the bill, and claiming title thereto in himself by virtue of a deed from his grandfather, dated May 31, 1897. The case was heard on bill, answer, replication and

testimony, and a decree rendered finding the issues for the complainants, and finding that the deed of May 31, 1897, had not been delivered by George M. Sims to said defendant, William Walls, and that no title passed by it, and decreeing partition of the eighty-acre tract claimed by him, as well as of the other lands described in the bill. From that decree appellant prosecutes this appeal.

The proof showed that George M. Sims died seized of about six hundred acres of land and $16,000 in personal property.    He left surviving him five married daughters and three daughters of a deceased daughter, his only heirs-at-law. He was a widower, seventy-eight years old, and had abandoned housekeeping.    For some time prior to his death he made his home with his daughters and grandson, William Walls, the appellant, but his more per-manent home was with his daughter, Mrs. George Ritter; that on May 31, 1897,—his seventy-eighth birthday,—he had an attorney prepare a will disposing of his personal estate, and also four deeds disposing, in part, of his real estate, but he then declared that business to be incom-plete.    One of the deeds conveyed, for a recited consid-eration of $4000, the eighty acres of land in controversy to appellant, without any qualification.    The other three deeds conveyed lands to three of his daughters for nomi-nal considerations.    These four deeds and the will, by his directions, were placed in an envelope, sealed, and his name written on the envelope.    After the death of Sims, the executors of his will, George Ritter and William Walls, the appellant, went to the bank at Waverly and received from the banker a private box which had been left in his custody by the decedent.    The box was taken by Ritter and Walls into a back room and unlocked with a key which Walls produced, and in it was found a sealed envelope.    They called the banker, and, handing the en-velope to him, asked him to open it and read its contents, which he did.    The contents proved to be the will above mentioned and the four deeds referred to.    The banker

testified that both Ritter and Walls had been there, at different times in Sims' lifetime, with the key to the box. The proof also shows that during his lifetime, and after the making of the will and deeds, deceased told several persons that he intended to give Walls the eighty acres in question, and told others that he had given the land to him. This is all the evidence found in the record which can be said to pertain to the delivery of the deed in question.

RINAKER & RINAKER, for appellant.

KNOTTS & TERRY, and JESSE PEEBLES, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This appeal presents two questions: First, was there a sufficient delivery of the deed in question to appellant to vest the title in him; and second, are appellees concluded by the declarations and admissions of deceased, while in possession, in disparagement of his title.

On the first point, appellant testified, over objection as to his competency, that the key to the box in the bank was delivered to him by the deceased more than two months prior to his death, and that it remained in his exclusive possession until after the box was opened in the presence of Ritter, at the bank. It is contended that under this proof the delivery of the key was a symbolical delivery of the deed, and manifested an intention of the grantor to deliver the same. Opposed to this is the evidence of two witnesses that appellant had stated to them that his grandfather had given him the key so he could transact some business in relation to a note or notes, and also the evidence of the banker, as above stated, that Walls and Ritter each had the key at different times during the lifetime of deceased, warranting the fair inference that the purpose in delivering the key to each of them was merely to enable either of them to transact business for the decedent.

It is a familiar and fundamental rule of law, that in order that a deed operate as an effectual transfer of the title to land it must be delivered. Delivery is the final act on the part of the grantor by which he consummates the purpose of his conveyance, and without it all the other preceding formalities are insufficient to render it effectual as an instrument of title. The law prescribes no particular form to be pursued in making the delivery, and it may be done "by acts without words, or by words without acts, or both." (*Provart* v. *Harris,* 150 Ill. 40; *Byars* v. *Spencer,* 101 id. 429; *Skinner* v. *Baker,* 79 id. 496; *Price* v. *Hudson,* 125 id. 284.) Or it may be "either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing, or it may be by both. But it must be by something answering to the one or the other of these, and with an intent thereby to give effect to the deed." (*Rountree* v. *Smith,* 152 Ill. 493; *Jackson* v. *Phipps,* 12 Johns. 419.) Not only must there be delivery to pass the title, but the delivery must be such that the grantor loses all power and dominion over the instrument of conveyance, and that, too, beyond his recall. There is no exception to the rule that, whatever method of delivery is adopted by the grantor, it must appear that by his acts or words, or both, he intended to divest himself of his title. The intention to make a delivery must clearly appear. These propositions have been decided so often by this court that a citation of cases is unnecessary. In this record we have no evidence whatever that the grantor said anything to the grantee, or to any one in his behalf, about the delivery of the deed, and the only evidence of the grantor's having done anything in relation to a delivery is the giving of the key to Walls, hereinbefore discussed.

We think it too clear for argument that, even treating all the evidence here relied upon as competent, it wholly fails to prove a delivery of the deed in question. It is equally clear that the testimony of appellant as to the

delivery of the key to the box to him was incompetent. The declarations made by the deceased, as proved, show an intention on his part to give the land to appellant, but they have no bearing on the vital question, Did he give it to him by the execution and delivery of a deed of conveyance, without which no title could pass?

On the second question above stated the doctrine of estoppel *in, pais* is relied upon by counsel for appellant. That doctrine is wholly inapplicable to the facts of this case. It is one of the fundamental principles of estoppel *in pais* that it can only be invoked by a person who has relied upon the statements or declarations made to him, and, relying upon them, has changed his condition with reference to the subject matter of the statements or declarations upon which the estoppel is based. (*Robbins* v. *Moore*, 129 Ill. 30; *Flower* v. *Elwood*, 66 id. 438; *Hill* v. *Blackwelder*, 113 id. 283; *Noble* v. *Chrisman*, 88 id. 186; *Powell* v. *Rogers*, 105 id. 318; Tiedeman on Real Prop. sec. 731.) In this case there is no evidence of any statements by Sims to appellant concerning the deed or the latter's ownership of the land. There is no evidence that Walls ever relied upon any statements made by Sims for anything whatever, and there is no evidence that Walls ever changed his position or condition with reference to the land, or incurred any liability or obligation on the faith of any statement or declaration by Sims concerning the land or Walls' ownership of it. On the contrary, it appears from the evidence that Walls was the tenant of Sims as to the land, and actually paid rent therefor to Sims' personal representatives for the year covering the execution of the deed relied upon, after the death of Sims, and at the time many of the declarations relied upon as raising an estoppel were made. There is no principle upon which, under this evidence, appellant's claim of title to the land in question can be upheld.

The circuit court committed no error in its decree, and it will accordingly be affirmed.          *Decree affirmed.*