Austin, Appellant, vs. Austin and others, Respondents.

*February 3 — February 27, 1900.*

*Deeds: Delivery: Intent: Fraud.*

1. In an action to establish the delivery of a deed to plaintiff from her husband, since deceased, and to compel the heirs of the grantor to execute and deliver to plaintiff deeds of confirmation, a finding that the deed was never delivered is *held* not to be so clearly against the weight of the evidence as to authorize reversal on appeal.

2. It appearing from the testimony that the deed was shown to plaintiff by the decedent so that she should believe it to be effectual, but without intention of making it so in fact, and with the intention that the decedent should afterwards destroy it if he chose, the deed being a pure gift and nothing having been done or advanced on the strength of it, the plaintiff must recover, if at all, by showing the fact of delivery, and cannot recover by showing the deception in which there was no legal fraud.

3. While a mental reservation on the part of the grantor cannot destroy the effect of an otherwise valid delivery, yet where actual delivery is not proven by direct testimony or admitted, and the question whether such actual delivery ever took place is to be determined by inferences from surrounding circumstances, the intent of the parties may materially assist in determining the proper inference to be drawn.

Austin vs. Austin and others.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an action in equity to establish the execution and delivery of a deed of a house and lot in the city of Milwaukee, which deed is claimed to have been executed and delivered to the plaintiff on the 26th of May, 1897, by her then husband, Edward A. Austin, now deceased, and afterwards destroyed, and to compel the defendants, as heirs at law of said Edward A. Austin, to execute and deliver to the plaintiff sufficient deeds confirming her title to said property. The defense was that said deed was never in fact delivered.

The evidence showed that the plaintiff and Edward A. Austin were husband and wife, having been married September 25, 1894, and that the property in question was their homestead, and that it was owned prior to the marriage by Edward A. Austin; that they resided thereon until the death of Edward by his own hand June 11, 1898; and that Edward left personal property amounting to a little more than $500, and no real estate except this homestead, which was of the value of about $7,500. Both the parties had been previously married, and Edward had four grown children at the time of his marriage to the plaintiff, and the plaintiff had one son, who was still a boy. The evidence further showed: That on May 26, 1897, Edward A. Austin, at his place of business in Milwaukee, executed a quitclaim deed of the property in question, running to the plaintiff as grantee, and expressing a nominal consideration of $1, which deed was duly witnessed and acknowledged, though the plaintiff was not present when it was executed, and there was no delivery at that time. At the same time Edward executed a paper purporting to be a will, in which the execution of the deed was recited, and a provision was made that the plaintiff's son should share in his property equally with his own children. Edward A. Austin took this deed and will to his home at noon on the day on which they were executed, and had an interview with his wife, at which no

one else was present, and there is no direct testimony that the deed was delivered at that interview. The plaintiff testifies that she had possession of the deed one hour at that time, but she was not allowed to testify to the fact of delivery. James R. Austin, a brother of the deceased living in Buffalo (but who was then in Milwaukee), testified that Edward told him after this interview that he had read the deed to the plaintiff. There is also testimony of two witnesses to the effect that Edward afterwards stated that he had deeded the homestead to his wife. Both the deed and the will were taken away by Edward after the interview, and on the same day delivered by him to James R. Austin, under instructions to take the same to Buffalo until he (Edward) should call for them to destroy them. It appears by the testimony of James R. Austin, as well as by other facts in the case, that there were serious difficulties between the husband and the wife at the time of this transaction and previous thereto, and that he (James) and Edward arranged prior to the execution of the deed that the deed and will should be made, and shown to the plaintiff, so that she would believe them to be effectual, but without intention of making them so in fact, and that Edward should afterwards destroy them if he chose. It appears that James R. Austin soon afterwards took the deed and will to Buffalo, and kept them, and that the differences between the husband and wife increased, and that she commenced a divorce action by the service of a summons; that Edward then went to Buffalo, and on the 5th of July, 1897, procured the deed and will from his brother, and cut off his signature on each instrument and wrote upon the back of each: "Annulled and ·signature removed July 5th, 1897. Edward A. Austin;" that afterwards a reconciliation took place between the husband and wife, and that Edward made another deed of the house and lot, and placed it with James, but this was never delivered, and was shortly afterwards returned to Edward at his request. The plaintiff testifies that James R. Austin

told her on the same day that the first deed and will were executed, and, after her interview with her husband, that Edward had handed the deed to him for her, but that he was to take it to Buffalo, and, if anything happened to Edward, he was to come on and have it recorded. As to this James R. Austin testifies, practically, to lack of recollection, but admits that he may have said it.

The court found that there was no intent to deliver the deed, and that no actual delivery took place, and dismissed the complaint, from which judgment the plaintiff appeals.

For the appellant there were briefs by *Lynn S. Pease* and *W. J. Turner*, and oral argument by *Mr. Pease*.

For the respondents there was a brief by *Nickerson, Roemer & Aarons*, and oral argument by *H. W. Nickerson*.

WINSLOW, J. There is really but one serious question in this case, and that is whether the finding of the trial court that there was no delivery of the deed in question to the plaintiff is so clearly against the weight of the evidence that it should be set aside by this court. Examination of the evidence convinces us that this question must be answered in the negative.

There was no direct evidence of the delivery. The deed, with signature removed, was produced on the trial by the defendants, so there was no presumption of delivery arising from possession. It is true that the plaintiff testified that she had possession of it for a short time on the day of its date, but this possession is not shown to have been in pursuance of a delivery, and may have been merely for examination, or may have been obtained without the grantor's knowledge. It is true also that there are some items of evidence tending to show that Edward A. Austin stated to others that he had deeded the property to his wife. It may well be that from all of this evidence the trial court might have been justified in finding that there was an actual de-

livery, and that this court could not have reversed such find-
ing; but, on the other hand, there is much evidence in the
case tending to convince the mind that no delivery ever
took place, and that the deed, from its inception up to the
time of Edward A. Austin's death, remained, and was in-
tended to remain, under the control of Edward or his brother,
and we cannot say that the court erred in giving credit to
this testimony, and finding that there never was a delivery
in fact.   The deed was a purely voluntary one, made by a
man with four children of his own, by which, if the deed
was effective, almost his entire property was given to his
second wife.   It was accompanied with a will which gave
to the wife's son an equal share of his property with his own
children.   It was executed when the domestic relations were
strained almost to breaking, and all the circumstances seem
to lend color to the belief, which the trial court evidently
entertained, that neither paper was ever intended to be ef-
fective, but simply intended to heal or palliate domestic dif-
ficulties by an apparent act of remarkable generosity.

It is true that a mental reservation on the part of the
grantor cannot destroy the effect of an otherwise valid de-
livery. *Bogie v. Bogie*, 35 Wis. 659.   But where actual de-
livery is not proven by direct testimony or admitted, and
the question whether such actual delivery ever took place
is to be determined by inferences from surrounding facts
and circumstances, the intent of the parties may materially
assist in determining the proper inference to be drawn.
While the scheme here shown to deceive the plaintiff was
not a creditable one, still it must be remembered that the
supposed transfer was a pure gift, and that there are no ele-
ments of legal fraud, because nothing was advanced or done
upon the strength of it.   The plaintiff must recover, if at all,
by showing the fact of delivery, not by showing deception
in which there was no legal fraud.

*By the Court.*— Judgment affirmed.