ZOERB, Appellant, vs. PAETZ, Administrator, and others, Respondents.

*September 8—November 27, 1908.*

*Deeds: Delivery: Escrow: Statute of frauds.*

1. It is the intent to pass title which makes the delivery of a deed effective, although mere mental reservation on the part of the grantor cannot affect that question.
2. Where an agreement, as understood by both parties, is that delivery of a deed is not to be made nor title pass until conditions, precedent or concurrent, are performed, a mere manual

tradition of the deed under the mistaken supposition that these prerequisites had been fulfilled, when in fact they had not, will not pass title irrevocably.

3. Where neither party to an attempted transfer of title to lands had definite knowledge of the character of the papers or agreements necessary to carry out their understanding, but mutually relied upon the scrivener to decide that question and prepare the papers, the intention of the scrivener as to the papers necessary to complete the transaction is in legal effect the intention of the parties, and his forgetfulness and consequent mistake in handing over a deed before a material part of the transaction had been performed is the forgetfulness and mistake of both parties, for the correction of which a court of equity will afford relief by cancellation of the deed.

4. A vendor, who proposed to convey land in consideration of the purchaser's agreement to support the vendor, delivered the fully executed deed to the scrivener, who drew the necessary papers to carry out the agreement of the parties, with oral direction to deliver the same to the purchaser when his wife had joined in the bond and mortgage securing such support. Before the wife had signed the vendor died and thereafter the scrivener handed the deed to the purchaser. *Held*, that the delivery of the deed to the scrivener did not constitute a valid delivery in escrow.

5. In such case, even if there could be a valid escrow, it was ineffectual in the absence of a valid written agreement to convey the land, such as would satisfy the statute of frauds, deposited with the deed.

APPEAL from a judgment of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Two equitable actions were consolidated and tried together. The first action was brought by *Paetz,* as administrator of the estate of one Louisa Kautz, deceased, to set aside and cancel a deed of lands executed by her to *Zoerb* a week before her death, on the ground that the deed was obtained by fraud and was never in fact delivered. The second action was afterward brought by *Zoerb,* alleging a mutual mistake in the description of part of the lands included in the deed and praying reformation thereof in this respect. In the latter action the defendant put in a counterclaim containing substantially the allegations of his complaint in the

first action. To this counterclaim a reply was served, and the two actions were then consolidated. All the heirs at law of Mrs. Kautz are parties to the consolidated action. There was very little material dispute as to the facts. Louisa Kautz, the intestate, was an aged and infirm widow, owning forty acres of farm land in Manitowoc county and eighty acres in Kewaunee, and living alone upon the Manitowoc land, which was her homestead, and possessing household furniture, stock, and farming implements. Her heirs consisted of a number of nephews and nieces and children of deceased nephews and nieces. The plaintiff was a son of one of the nieces and was a married man living in the town of Menominee, Michigan. He came to Mrs. Kautz's home from Menominee in the latter part of June, 1905, and remained there several days, his wife remaining in Michigan. During this time negotiations were had between him and Mrs. Kautz looking towards the deeding of the lands in question to *Zoerb* in consideration of an agreement to support and care for Mrs. Kautz during her life. These negotiations resulted in the calling in of Adolph Chloupek, a lawyer and notary public residing at Mishicott, eight miles distant, on July 3, 1905, to draw the papers necessary to carry out the agreement which had been made. Neither of the parties knew what form the papers were to take, but both relied on Mr. Chloupek to draw such papers as were necessary to give effect to the agreement. Mr. Chloupek came to the house, and, after talking with the parties, advised the making of a deed of the lands and a bill of sale of the personal property of the homestead to *Zoerb* and the giving back of a bond for care and support secured by mortgage on the lands conveyed. This being satisfactory to the parties he proceeded to draw the papers. He determined in his own mind that it would be better to have Mrs. Zoerb join in executing the bond and mortgage with her husband, but did not inform the parties of this conclusion at the time. Having learned the details of the arrangement he drew a bill of sale of the

personal property and a warranty deed of the lands to *Zoerb*
(inserting, however, by mistake an erroneous description of
the Kewaunee county lands) and a bond for care and sup-
port in the penal sum of $3,000, in form making both *Zoerb*
and his wife promisors, and a mortgage on the lands also to
be executed by *Zoerb* and his wife to secure performance of
the conditions of the bond.    The conditions were numerous,
and provided for support and personal care in sickness and
health, for board in case she chose to board with the Zoerbs,
and for certain quantities of provisions annually in case
she chose to board herself, for a certain cash payment each
year, for the use by her of certain rooms in the house, for
the cleaning and scrubbing of those rooms, for the furnishing
of firewood and water, and other things.    The considera-
tion named in the deed was one dollar and other valuable
considerations.    When the papers were completed Chloupek
temporarily forgot that Mrs. Zoerb was to sign them, and
had Mrs. Kautz sign the deed and bill of sale and *Mr. Zoerb*
the bond and mortgage, and all the papers were formally de-
livered.    *Zoerb* paid the dollar, and both parties supposed
that the transaction was complete.    The parties did not sep-
arate, however, but remained in conversation for nearly or
quite half an hour, when Chloupek suddenly remembered
that he had intended to have Mrs. Zoerb sign the bond and
mortgage, and he immediately called attention to the omis-
sion and stated that, though not absolutely necessary, still
he had intended that she should sign, and he thought it safer
to have her do so, and advised that the deed, bond, and mort-
gage be placed in his hands to be held until Mrs. Zoerb
should come from Michigan and sign the bond and mortgage
with her husband, when he would deliver the papers.    Both
the parties readily agreed to this, and Chloupek took back
all the papers, except the bill of sale, to his home.    Mrs.
Kautz died on the morning of July 10th following, and
*Mr.* and Mrs. Zoerb came to Chloupek's house in the after-
noon of the same day, and Mrs. Zoerb then offered to sign

the bond and mortgage, but Chloupek declined to allow her to do so because of Mrs. Kautz's death. Chloupek then delivered the deed to *Zoerb*. The bill of sale remained in *Zoerb's* hands from the time of its delivery on July 3d. The bond and mortgage were retained by Chloupek and were put in the hands of the clerk of court upon the trial. After the transaction of July 3d *Zoerb* remained at Mrs. Kautz's homestead doing chores until July 5th, and then returned to Michigan to get his wife, leaving a person on the farm to do the chores and help Mrs. Kautz. After Mrs. Kautz's death *Zoerb* moved into the homestead and took possession of the land in Kewaunee county, and has since retained such possession. The court found that Mrs. Kautz was competent to transact business, that there was no fraud or overreaching, but that there was no complete delivery of the deed, or, if there was, that *Zoerb* was estopped by his conduct in consenting to the subsequent holding of the papers by Chloupek to claim that there had been a delivery, and denied *Zoerb* any relief. The court further held that the respondents were entitled to a cancellation of the deed, but he stayed the execution of the judgment for sixty days in order to give *Zoerb* time to bring an action for specific performance if he were so advised, not deciding, however, whether he was entitled to relief in such an action because the issue was not presented by the pleadings. From judgment in accordance with the findings *Zoerb* appeals.

For the appellant there was a brief by *Burke & Craite* and *C. H. Sedgwick,* and oral argument by *Isaac Craite.*

For the respondents there was a brief by *J. S. Anderson,* attorney, and *L. J. Nash,* of counsel, and oral argument by *Mr. Anderson.*

The following opinion was filed September 29, 1908:

WINSLOW, C. J. The appellant strenuously contends that the first delivery of the deed to him was an absolute delivery, which passed title, and that he could not be divested

of title by merely handing the same back to the scrivener, nor by anything short of the execution and delivery of another deed by himself. As a general proposition it is true that delivery of a deed with intent to pass title does pass the title, and that the surrender or cancellation of such deed does not revest the title in the vendor. *Slaughter v. Bernards,* 97 Wis. 184, 72 N. W. 977. No one would contend, however, that the handing over of a deed merely for purposes of examination, or by mistake supposing it to be another paper, would carry any title to the grantee, although there would in both cases be manual tradition of the document to the grantee. It is the intent to pass title which makes the delivery effective, although mere mental reservation on the part of the grantor cannot affect the question. *Rogers v. Rogers,* 53 Wis. 36, 10 N. W. 2. When, however, the agreement as understood by both parties is that delivery is not to be made nor title pass until precedent or concurrent conditions are performed or agreements made by or on behalf of the grantee, a mere manual tradition of the deed under the mistaken supposition that these prerequisites had been fulfilled, when in fact they had not, will not pass title irrevocably. In such case the whole transaction is incomplete, and, as in other cases of mutual and material mistake, a court of equity has ample power to cancel the apparent conveyance in the same manner as it may cancel other instruments under such circumstances. *De Voin v. De Voin,* 76 Wis. 66, 44 N. W. 839.

In the present case neither party had definite knowledge of the character of the papers or agreements necessary to carry out their understanding, but they mutually relied on Chloupek to decide that question and prepare the papers. Chloupek decided that, in order to render the transaction entirely safe for Mrs. Kautz, the bond and mortgage should be signed by Mrs. Zoerb as well as by her husband, and this course was manifestly desirable because of the many pro-

visions in the bond requiring personal service and attention which could only be properly performed by a woman. He drew the papers intending that she should so sign and that the transaction should not be completed until she did sign. Under the circumstances his intention was in legal effect the intention of both parties, and his forgetfulness and consequent mistake in handing over the papers before a material part of the transaction had been performed was the forgetfulness and mistake of both parties, for the correction of which a court of equity will afford relief by cancellation of the deed.

But it is contended that the subsequent delivery of the papers to Chloupek, with directions to deliver the deed to *Zoerb* when his wife had executed the bond and mortgage, constitute a valid delivery in escrow. This contention is fully met and answered by reference to the case of *Campbell v. Thomas,* 42 Wis. 437, which presented practically the same question. Granting that there could be a valid escrow upon such a condition as is here presented, still there was no valid written agreement to convey the land, such as would satisfy the statute of frauds, deposited with the deed. This was held necessary in the case cited, and that view is decisive here.

There was plainly no error prejudicial to the plaintiff in the conclusions of the court, and the judgment must be affirmed.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied November 27, 1908.