BUTTS and others, Respondents, vs. RICHARDS, imp., Appellant.

*December 11, 1912—February 18, 1913.*

*Deeds: Delivery: Presumptions: Retention of deed until death: Husband and wife: Evidence.*

1. To constitute a valid delivery of a deed the grantor must part with his dominion and control of it, with intention to pass title.
2. The presumption of intention to deliver that might arise from the execution of a deed is overcome by showing that the grantor had the deed in his possession and under his control at the time of his death.
3. Even if, in the case of a deed from husband to wife, a lesser degree of proof of delivery is required than in other cases, yet the finding of the trial court in this case that there had been no delivery is *held* not to be against a clear preponderance of evidence, from which it appears, among other things, that a deed made by a husband to his wife, conveying his farm, was kept until his death, three years later, locked up in a box, the key to which he carried, and does not appear that the deed ever came to the wife's possession until about ten days after his death, or that he ever said or did anything, except to make the deed, evincing an intention to vest the title in her during his lifetime.

    KERWIN, SIEBECKER, and TIMLIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

For the appellant, *Lucy Richards,* there was a brief by *Lincoln & Brindley,* and oral argument by *E. E. Brindley.*

For the respondents there was a brief by *Burnham & Black,* and oral argument by *C. D. Black.*

BARNES, J.    Henry Butts died intestate in August, 1908, leaving a widow, two children, and several grandchildren as his heirs at law.    Prior to August 4, 1905, he owned a farm of seventy-four acres in Richland county.    On such date he executed a warranty deed of this farm to his wife, Elizabeth. It does not appear that such deed ever came into the posses-

sion of the wife until about ten days after Butts's death.    It was then found by his son in a box in which Mr. Butts kept his money and valuable papers.    This box was kept locked and Butts carried the key on his person.    During his last illness he gave the key occasionally to a grandchild who was living with him, for the purpose of getting money from the box for household expenses.    It does not appear that he ever gave the key to his wife for any purpose.    After his death the box was found locked and the key was found in· the clothing of the deceased.    Gertrude Warren testified to a conversation with the widow of Henry Butts shortly after his death, in which Mrs. Butts stated that her husband had made no will but had made a deed to her; that the deed was not placed on record because the husband did not want to record it; that her husband never gave her the deed, but kept it locked up in a drawer, and that she was unable to find the key.    Philip Warren gave substantially the same evidence.    The evidence further showed that the box in which the deed was kept was customarily referred to as decedent's box, both by himself and his wife.    Francis Stace, the attorney who drew Mrs. Butts's will, testified that she told him she owned a farm in Wisconsin which her husband had given her a deed of and which she wished to dispose of by will.    He testified further: "I think she stated that she had a deed some three years before her husband died."    A very general objection was made to the competency of this evidence.    *Lucy Richards,* a daughter, testified that her father told her at one time that the property was in the name of himself and wife.

Elizabeth Butts disposed of the farm by will, and the contest arises between the heirs at law of Henry Butts and the devisees under the will of his widow.    The circuit court found that there had been no delivery of the deed and that the property should be distributed according to the laws relating to the estates of intestates.    The legatees under the will, or at least some of them, appeal.

The only question in the case is whether the finding of the

circuit judge that there was no delivery of the deed is against the clear preponderance of the testimony. If the inference of nondelivery may be fairly drawn from the evidence, the judgment must be affirmed.

Delivery is largely a question of intention. *Curry v. Colburn,* 99 Wis. 319, 320, 74 N. W. 778; *Zoerb v. Paetz,* 137 Wis. 59, 117 N. W. 793. It may be accomplished by words without acts. *Bogie v. Bogie,* 35 Wis. 659, 666. Conversely, it may also be accomplished by acts without words. *Cerney v. Pawlot,* 66 Wis. 262, 28 N. W. 183; *Bates v. Winters,* 138 Wis. 673, 120 N. W. 498. But the grantor must part with his dominion and control over the deed with intention to pass title. *Curry v. Colburn, supra; Prutsman v. Baker,* 30 Wis. 644. There are authorities which hold that when it is shown that a deed has been properly executed a presumption of delivery arises. Jones, Evidence (2d ed.) § 50 (44). Delivery may also be implied from circumstances. 21 Cyc. 1290, and cases cited. The presumption of intention to deliver that might arise from the execution of a deed is overcome by showing that the grantor had the deed in his possession and under his control at the time of his death. *Shetler v. Stewart,* 133 Iowa, 320, 107 N. W. 310; *Fisher v. Hall,* 41 N. Y. 416.

The inherent weakness in the case for the appellant is that there is nothing in the testimony tending to show that Butts ever uttered a word or performed an act which evinced an intention on his part to vest the title to his property in his wife prior to his death, except to make a deed which he carefully locked up in his strong box, the key of which he carried about his person. He guarded it as closely as he did his pocketbook. When any money was wanted from this he apparently did not permit his wife to get it, but had his grandchild bring it to him so that he could take out what money he saw fit. After his death his widow was unable to find the key. During her lifetime she apparently never told any one

that the deed had been delivered to her or that her husband had said anything to her evincing an intention to make a delivery during his lifetime. Conceding that the testimony of the attorney should be considered, it proves very little. He thought Mrs. Butts told him that her husband deeded the property to her. She might well have made this statement, because she knew that her husband had in fact executed a deed, although there had been neither delivery nor intention to deliver. She was not learned in the law and might be wholly ignorant of the fact that delivery was necessary to convey title. In any event her statement was correct, if by saying that her husband deeded her the property she meant that he had executed a deed of it to her. The husband no doubt intended that his wife should have the property after his death and told her that he had made a deed, but it was an entirely reasonable inference for the trial court to draw that Butts meant to keep the deed and the property under his control as long as he lived. The deed was executed about three years before Butts died. It conveyed all his real estate. A statement made by the wife, when told that the deed was no good unless given to her, throws some light on the subject. She said: "You know how it always was with Henry [meaning her husband], big I, little you, he never wanted me to have nothing." The trial court on the whole evidence reached the conclusion that Butts supposed that a deed might be made to perform the functions of a will and that he wanted to hold onto the farm as long as he lived, thinking that after his death the farm would go to the widow by virtue of the deed. Whether this be true or not, the inference is quite strong that Butts did not intend to place the title to his property in his wife during his lifetime. The case is quite similar in its facts to *Reichert v. Wilhelm,* 83 Iowa, 510, 50 N. W. 19, in which it was held that there was no delivery. Other analogous cases are *Roup v. Roup,* 136 Mich. 385, 99 N. W. 389; *Bisard v. Sparks,* 133 Mich. 587, 95 N. W. 728; *Anderson*

*v. Anderson,* 126 Ind. 62, 24 N. E. 1036; *Walls v. Ritter,* 180 Ill. 616, 54 N. E. 565; *Hayes v. Boylan,* 141 Ill. 400, 30 N. E. 1041; *Noble v. Fickes,* 230 Ill. 594, 603, 82 N. E. 950; *Oswald v. Caldwell,* 225 Ill. 224, 231, 80 N. E. 131.

If it should be held that a lesser degree of proof of delivery is required between husband and wife than in other cases, we would still be unable to say that the findings of the circuit judge were against the clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

The following opinion was filed February 26, 1911:

Kerwin, J. (*dissenting*).   The deed in question was duly made, signed, and sealed in 1905, and placed in a bureau drawer in the house occupied as the home of the husband and wife, grantor and grantee.   This drawer was kept locked and the key carried by the grantor, husband.   The grantor died intestate in 1908 leaving the deed in the drawer.   After his death it was taken therefrom by the grantee and recorded. The property covered by the deed was the homestead.   The grantee died in 1910.   The only question involved is whether the deed was delivered to the grantee.

Where a deed is found in the possession of the grantee after death of the grantor, there is a presumption of delivery. Jones, Evidence (2d ed.) § 50 (44); 1 Devlin, Deeds (3d ed.) §§ 261, 262, 269; *Dale v. Lincoln,* 62 Ill. 22; *Pitts v. Sheriff,* 108 Mo. 110, 18 S. W. 1071; *Wall v. Wall,* 30 Miss. 91; *Stevens v. Hatch,* 6 Minn. 64.   The fact that a deed is found in the possession of a grantor does not always rebut the presumption of delivery, if such possession is consistent with delivery.   *Bunnell v. Bunnell,* 23 Ky. Law Rep. 800; *Davis v. Davis,* 92 Iowa, 147, 60 N. W. 507; *Brown v. Brown,* 61 Tex. 56; *Reed v. Smith,* 125 Cal. 491, 58 Pac. 139.

While it is true that there must be a delivery in all cases to make a valid deed, a manual passing of the deed to the grantee

is not always necessary.   There may be a valid delivery by words or acts of the grantor with intent to deliver, though there be no manual passing of the deed to the grantee.   *Le Saulnier v. Loew,* 53 Wis. 207, 10 N. W. 145; *Zoerb v. Paetz,* 137 Wis. 59, 117 N. W. 793; *Bates v. Winters,* 138 Wis. 673, 120 N. W. 498; *Klabunde v. Casper,* 139 Wis. 491, 121 N. W. 137; *Austin v. Austin,* 105 Wis. 680, 81 N. W. 1012; *Chase v. Woodruff,* 133 Wis. 555, 113 N. W. 973; *Bogie v. Bogie,* 35 Wis. 659.   In *Bogie v. Bogie, supra,* it is said: "As a deed may be delivered to a party without words, so may a deed be delivered by words without any act of delivery." In *Curry v. Colburn,* 99 Wis. 319, 320, 74 N. W. 778, this court said: "The question of delivery is largely of intention." In 21 Cyc. 1290, it is said: "The deed of the husband to the wife should be executed, acknowledged, and recorded in accordance with the local laws.   The deed must of course be delivered, but delivery may be implied from the circumstances of the case and from the conduct of the parties."   If the possession of the grantor is consistent with delivery, the presumption of delivery may still obtain and will prevail until overcome by sufficient evidence.   Brewster, Conveyancing, § 298, and cases there cited.   Any evidence tending to show delivery, uncontradicted or unimpeached, is sufficient under the circumstances of the instant case.

In the case at bar there is no evidence sufficient to overcome the presumption of delivery arising from the making and sealing of the deed.   On the contrary the evidence produced tends to prove delivery.   There is no direct evidence that the deed was not delivered.   The case is made to turn, in the opinion of the court, upon the fact that the deed was kept in the drawer to which the grantor carried the key. This, in my opinion, does not overcome the presumption of delivery arising from the making of the deed, upon the undisputed facts of the case.   Aside from the making of the deed, all the circumstances support the presumption of de-

livery.   The property was the homestead, consisting of sev-
enty-four acres of agricultural land, worth about $3,000,
probably not more than sufficient to properly maintain the
grantee during the balance of her life.   The husband,
grantor, made no will, but allowed the deed to remain in the
drawer for a period of about three years and until his death.
Had he not intended a delivery, doubtless he would have
made some other disposition of the property.   Under the set-
tled doctrine of this court, no manual passing of the deed to
the wife, grantee, was necessary.   Delivery could be made by
words with the intention of delivery, without any other act
on the part of the grantor.   On making, signing, and sealing
the deed the grantor could make delivery by words expressing
his intention to deliver to the grantee.   The undisputed evi-
dence shows there was delivery.   The respondents proved
the declarations of the grantee to the effect that the grantor,
her husband, deeded the property to her.   The only infer-
ence that can be drawn from this evidence is that the deed
was delivered.   The undisputed evidence further shows that
the grantee understood the property was deeded to her from
the time the deed was made and so reported to the scrivener
who drew her will and caused the property to be included in
it.   The grantee also said, in a conversation shortly after
the death of her husband, that he did not make a will, but
"he has made a deed and deeded the property to me."   This
evidence standing alone proves delivery.

But it is said that the statements given in the same con-
nection by the grantee to the effect that her husband never
gave her the deed, but kept it locked in a drawer and that she
was unable to find the key, are sufficient to overcome the
declaration that her husband had deeded the property to her.
This position is untenable.   Her evidence clearly meant that
she never had manual possession of the deed, and was not in-
consistent with her statement that the property had been
deeded to and was owned by her.   If there was a delivery the

title could not be divested by any act of the grantor.  Keeping the deed in the drawer was consistent with delivery, the grantor acting as custodian of the deed, since he desired that it should not be recorded during his life.   That the husband should act as custodian of the wife's valuable papers is not unusual, but on the contrary, under the circumstances of this case, would reasonably be expected.   The drawer was the usual and proper place to keep valuable papers of husband and wife and the place where the deed would naturally and probably be kept.   It does not appear that there was any other place for the safe keeping of such an instrument. Under these circumstances there should have been some proof negativing the presumption of intended delivery to the wife arising from the relationship and situation of the parties, and this proof was not produced.   The case was tried and decided as if the presumptions were the other way.

Moreover, it is not established that the wife, grantee, did not have access to the drawer.   There is no direct testimony that she was excluded from it or did not have access to it. The only evidence on the point is that her husband carried the key and the negative evidence of witnesses that they never saw the wife go to the drawer in person.   But it appears from the evidence that whenever she desired she sent her grandson to her husband and got the key and had the drawer unlocked. One witness testified: "My mother caused the drawer to be unlocked when she wanted to get money out of it; that is where Pa kept his money."   The drawer was spoken of as Henry's drawer, meaning grantor's drawer.   Grantee would say to her grandson, "Get your key and go to Henry's drawer," and the grandson testified that he would unlock the drawer for grantee perhaps once a month.   The testimony generally is that she sent her grandson to her husband for the key when she needed money, procured the money, and returned the key to her husband.   It is said in the opinion of the court that it does not appear that the husband ever gave

the key to his wife for any purpose.  It does not appear, however, from the evidence that he did not give his wife the key and allow her access to the drawer.

· It is also said in the majority opinion that it does not appear that the husband, grantor, ever uttered a word evincing an intention to vest title in his wife, the grantee.   There is nothing in the evidence showing that he ever uttered a word evincing an intention inconsistent with vesting title in the grantee. The evidence of the wife that he had deeded the property to her, together with the presumption arising from the making of the deed, clearly establishes the execution and delivery of the deed to her.

Shetler v. Stewart, 133 Iowa, 320, 107 N. W. 310, is cited in the opinion of the court as authority to the point that the presumption of intention to deliver arising from execution of a deed is overcome by showing that the grantor had the deed in his possession and under his control at the time of his death.   An examination of this case, however, will show that it is readily distinguishable from the case at bar. In that case the deeds were made and placed in the private box of the grantor and remained there during his life, and the grantees had no knowledge that such deeds were made until after his death, and there was no evidence of delivery. To the same effect is Fisher v. Hall, 41 N. Y. 416, also cited in the opinion of the court.

The following cases are relied upon in the opinion of the court, but I think an examination of them will show that they are distinguishable from the instant case: In Reichert v. Wilhelm, 83 Iowa, 510, 50 N. W. 19, there was a contest by the creditors of the alleged grantor, and that question was controlling.   In Roup v. Roup, 136 Mich. 385, 99 N. W. 389, it was established that the deeds were not to be recorded until after the death of the grantor and that the object of making was to avoid the expense of administration. Bisard v. Sparks, 133 Mich. 587, 95 N. W. 728, is a case where it was

agreed that a deed to an infant be retained by the grantor in his possession and under his control until his death, the father of the infant, however, having knowledge of the deed and having been instructed by the grantor to have the deed recorded if anything happened to him (grantor). *Anderson v. Anderson,* 126 Ind. 62, 24 N. E. 1036, is where deeds were seen in the private drawer of grantor by the grantees, but after the death of the grantor the deeds could not be found. Held, no delivery. In *Walls v. Ritter,* 180 Ill. 616, 54 N. E. 565, it was held that the mere fact of the grantee in a deed producing the key to the grantor's safety-deposit box after the latter's death, in which box was found a sealed envelope containing the deed, did not prove delivery. *Hayes v. Boylan,* 141 Ill. 400, 30 N. E. 1041, is a case where a deed was made by the grantor to his three sons. He handed it to his son Charles, saying, "Take this deed and put it in our box at the bank." The grantor did no other act evincing delivery, but requested Charles not to let the other grantees know anything about the matter until after his death, the grantor retaining possession and control of the lands until his death. Held, no delivery. *Noble v. Fickes,* 230 Ill. 594, 82 N. E. 950, involved the question of whether the instrument was good as a testamentary disposition of the property—whether it was good as a will. *Oswald v. Caldwell,* 225 Ill. 224, 80 N. E. 131, also involved the question of whether the instrument was good as a testamentary disposition of the property.

It is doubtless true that if the deed were found in possession of grantor at time of his death, without explanation, there would be presumption of nondelivery. But the facts here raise presumption of delivery, and that presumption has not been overcome. The wife understood the property had been deeded to her—that it was her property. The evidence shows this, and this evidence is undisputed. Her evidence that she never had the deed merely meant that it had been kept in her husband's drawer, where it might and probably

would be kept in case the husband intended delivery. The key to the drawer was not found until about ten days after his death.

Besides, these statements were drawn out after she had been told that if she did not have the deed and it was not recorded the property was not hers. There is no question of creditors or testamentary disposition in this case. All the equities favor execution and delivery of the deed. It was the natural and probable thing, under the undisputed facts, for the husband to have done. The attack on the deed was delayed until death had closed the mouth of the grantee so her evidence could not be produced. But even without her evidence and as the record stands, I am convinced that the clear preponderance of the evidence establishes that the deed was delivered, therefore the judgment below should be reversed.

I am authorized to say that Mr. Justice SIEBECKER and Mr. Justice TIMLIN concur in this dissent.