MARY A. ROUNTREE et al.

v.

CATHERINE S. SMITH.

*Filed at Ottawa October 29, 1894.*

1. DEEDS—*how far possession proves delivery.* Giving the grantee manual possession of a deed tends to prove delivery, and, when unexplained, is sufficient to vest title, but it is not conclusive.

2. SAME—*how delivery of may take place—intent.* Delivery of a deed may be *actual*, by doing something and saying nothing, or *verbal*, by saying something and doing nothing, or it may be by both; but it must answer to the one or the other or both these, and with intent thereby to give effect to the deed.

3. VOLUNTARY CONVEYANCE—*not enforced by courts.* Voluntary agreements are not enforcible in courts, even though under seal.

4. SAME—*grantor may recede at any time before completion.* So long as the purpose of a grantor to make a voluntary conveyance is *in fieri*, the grantor may, with or without cause, at any time, recede from such purpose.

5. If such a deed is given to the grantee with the intention it shall not take effect unless security respecting certain matters is given, the gift becomes executed only upon the offering and *accepting* of such security.

6. Permission to record such a deed, if given by the grantor only in furtherance of an ultimate purpose to make the gift *provided* the grantee does certain things, will not prevent the giver from withdrawing the gift at any time before the donee has performed.

APPEAL from the Circuit Court of Lake county; the Hon. CLARK W. UPTON, Judge, presiding.

Mr. GEORGE HUNT, for the appellants:

In the absence of proof to the contrary, the presumption is that a deed is delivered on the day of its date. (*Jayne* v. *Gregg*, 42 Ill. 413.) And this is true although it was acknowledged afterwards. *Hardin* v. *Crate*, 78 Ill. 533.

Where a deed, duly executed, is found in the hands of the grantee, there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption. *Tunison* v. *Chamblin*, 88 Ill. 378; *McCann* v. *Atherton*, 106 id. 31.

When a deed is produced by the grantee named therein, the presumption of law, in the absence of proof to the contrary, is, that the deed was signed and sealed according to its purport, and that the grantee received it from the grantor. The presumption of delivery must be destroyed by clear and positive proof, and the burden of such proof is upon the grantor. *Reed* v. *Douthit*, 62 Ill. 348.

A proper deed passes all the title of the vendor, without regard to the consideration. *Fetrow* v. *Merriweather*, 53 Ill. 275.

Natural affection, while not a valid consideration for an executory contract, is sufficient to support a deed. *Kirkpatrick* v. *Taylor*, 43 Ill. 207.

The seal imports a consideration. *Stacker* v. *Hewitt*, 1 Scam. 207.

As between grantor and grantee, the recital as to consideration is conclusive. The deed estops the grantor from denying its execution for the uses and purposes specified. *Kimball* v. *Walker*, 30 Ill. 482.

The consideration may be inquired into in any way, except to show that there is no consideration to support the deed. *Insurance Co.* v. *Wolf*, 37 Ill. 354.

Parol evidence is inadmissible to contradict the acknowledgment of consideration, in order to invalidate the deed between the grantor and grantee. *Trafton* v. *Hawes*, 102 Mass. 541; *Wilkinson* v. *Scott*, 17 id. 257; *Goodspeed* v. *Fuller*, 46 Me. 141; *Rockwell* v. *Brown*, 54 N. Y 213.

The recital in the deed is conclusive as to the fact that there was a consideration for the deed. *Bassett* v. *Bassett*, 55 Me. 127; *Paige* v. *Sherman*, 6 Gray, 511; *Miller* v. *Goodwin*, 8 id. 542; *Murdock* v. *Gilchrist*, 52 N. Y. 246.

It is not necessary that the consideration be actually passed to the grantor, if the receipt of a proper consideration is acknowledged by him in the deed. *Jackson* v. *Alexander*, 3 Johns. 434; *Jackson* v. *Pike*, 9 Cow. 69 ; *White* v. *Weeks*, 1 Pa. St. 489 ; *Bragg* v. *Geddes*, 93 Ill. 39 ; *Cairns* v. *Colburn*, 104 Mass. 274.

The amount and kind of consideration stated in the deed are presumed to be as agreed upon; and this can be varied by parol evidence in an action for recovery of consideration, but not to avoid the deed. *Drury* v. *Fremont*, 13 Allen, 171; *Grout* v. *Townsend*, 2 Denio, 335; *Rockhill* v. *Spraggs*, 9 Ind. 30; *Harper* v. *Perry*, 28 Iowa, 63; 2 Washburn on Real Prop. 658.

Mr. WILLIAM E. HUGHES, and Mr. T. L. HUMPHREVILLE, for the appellee :

Mrs. Smith's deeds were clearly intended to operate as a testament in favor of Mrs. Rountree, and, therefore, neither one of them is good as a conveyance. *Walker* v. *Jones*, 23 Ala. 448; *Hall* v. *Bragge*, 28 Ga. 330; *Sims* v. *Arnold*, 10 id. 506; *Hester* v. *Young*, 2 Kelly, 31; *Carey* v. *Dennis*, 13 Md. 1; *Baldwin* v. *Maultsby*, 26 N. C. 505; *Hawks* v. *Pike*, 105 Mass. 560.

The instruments in the grantee's hands are only *prima facie* evidence of a delivery. Proof of a contrary intention rebuts that presumption. Tiedeman on Real Prop. sec. 813; *Taft* v. *Taft*, 59 Mich. 185; *Black* v. *Shreve*, 13 N. J. Eq. 336; *Roberts* v. *Jackson*, 1 Wend. 478.

The essence of delivery is the intention of the grantor. *Bryan* v. *Wash*, 2 Gilm. 557; *Gunnell* v. *Cockerill*, 84 Ill. 319.

To constitute a sufficient delivery of a deed there must be a clear manifestation of the intention of the grantor that the deed shall pass title at that particular time, and that the grantor shall lose all control of the title. *Bovee* v. *Hinde*, 135 Ill. 137.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court :

In 1885 appellee resided upon a twenty-acre tract of land which she owned, near the city of Waukegan. Appellants, husband and wife, were teachers of elocution in Chicago. They took rooms in appellee's residence, in which they spent the month of August of that year. The

summers of 1886 and 1887 they also spent at her home, she and they living as one family. About the first of September, 1887, Mrs. Smith made a trip to her native town in the east, being absent several weeks. She spent the winter with appellants at their rooms in Chicago, and thereafter, to and including the summer of 1891, she lived with them in the city during the winter months and they at her home in summer, the family relation at both places being continued. Appellee is a widow about sixty-eight years of age, without children or other near relations. She owned, in addition to the twenty-acre homestead, two tracts of land in Lake county,—one of thirty acres and the other of forty-one and a fraction,—and certain lots, and a small tract of land in Cook county, near Englewood, all of which she valued at $100,000. The parties apparently became warm friends during the summer of 1885, and that relation continued until the latter part of the year 1891. Before making her visit east in the fall of 1887, appellee formed the purpose of giving Mrs. Rountree the homestead and the thirty-acre tract, the deeds to take effect at her death, and to that end she executed and acknowledged two deeds, one for each of the tracts, which she placed in an envelope, sealing it up and writing on it the words, "To be opened at my death," and placing it in her private secretary. Subsequently she concluded to enlarge the gift, and include in it the whole of her real estate, and of date February 14, 1891, she executed four deeds, one conveying to Mrs. Rountree the Englewood property, and each of the others one of the Lake county tracts. These deeds she gave to Mrs. Rountree soon after they were made, but, as she says, not with the intention of then passing the title. She, afterwards, about October 22, 1891, consented to the recording of the one to the homestead, but not intending thereby to make it absolute. The other deeds remained in the hands of Mrs. Rountree, unrecorded, until about the 13th of November, 1891, during which time the parties were negotiating as

to security to be given Mrs. Smith. Mrs. Rountree then, in the presence of appellee, gave them, with the one conveying the homestead, and, as she says, the two executed in 1887, to Erastus C. Moderwell, an attorney. Shortly thereafter appellee became displeased with appellants, and her former friendship, especially for Mrs. Rountree, wholly ceased. She then demanded the return and cancellation of her deeds. This request Mrs. Rountree refused to comply with, but withdrew them from the hands of Moderwell, and in April, 1892, caused them to be placed on record. Thereupon appellee filed this bill in the circuit court of Lake county, and afterwards an amended bill, asking that each of said deeds, with the records thereof, be set aside and canceled. The circuit court granted the prayer of her bill, and appellants appeal.

The theory of appellee's case is, that the deeds of 1891 were voluntary conveyances made by her, with the agreement between herself and Mrs. Rountree, the grantee, that she and her husband would execute and deliver back to her, notes equal in amount to the value of the lands conveyed, secured by mortgages or deeds of trust upon the premises, it being understood between the parties that appellee would so manage the securities that at her death the grantee would become the absolute owner of the property, free from all incumbrance ; that some time after their execution she gave them to Mrs. Rountree, but with the agreement, on her part, that they were not to be recorded, but remain subject to her control, she to continue to have control of the property and the right to sell and convey any part of it and receive the purchase money, in which event the securities would, to that extent, be destroyed ; that she subsequently gave to Mrs. Rountree permission to have the deed to the homestead recorded, but not for the purpose of giving effect to it, except as previously agreed upon. In short, her contention is that the deeds were intended to become absolute only upon

her death, and that they were executed and delivered, and the one recorded, upon that agreement, and with the understanding that the conveyances were not to take effect or be treated as absolute until security should be given her as above stated, which Mrs. Rountree and her husband afterwards refused to give, at least until after she had determined not to perfect the conveyances, and so informed them, demanding the return and cancellation of her deeds. As to the deeds of 1887, she alleges, in her amended bill, that they were not intended to be delivered until her death, and never were in fact delivered by her in any manner.

The theory of the appellants is, that the deeds of 1891 were voluntarily executed, acknowledged and delivered on the day of their date, without any understanding between the parties, then or previously, that they were not to become at once absolute; that they were made without their knowledge or procurement, and were wholly voluntary on the part of appellee; that any understanding between the parties as to giving security, for any purpose, was an afterthought on the part of Mrs. Smith, and arose after the complete execution and unconditional delivery of the deeds. Therefore they say, without proof, not only of an agreement on their part to do something in consideration of the conveyances, but also a breach of that contract, appellee has no right to have them set aside and declared void. They claim that the deeds of 1887 were, long after the execution and delivery of those of 1891, given to Mrs. Rountree by Mrs. Smith, as additional proof of her voluntary purpose to give her all the real property she owned.

That the deeds were voluntary on the part of appellee, intended as mere gifts to Mrs. Rountree, is not denied. While the latter claims to have performed many acts of kindness towards Mrs. Smith, and rendered her valuable services from time to time, both before and after the deeds were executed, and did, no doubt, in that way

win the friendship and affection which prompted the gift, it is not claimed that any such services entered into the consideration for the deeds, in the sense of a contract. Mrs. Rountree's own testimony is to the effect that the conveyances were intended as gifts to her, and that no contractual relation existed between herself and Mrs. Smith, at any time, under which she could have compelled them. The testimony of appellee is positive and full, to the effect that both before and after the deeds of 1891 were transferred to Mrs. Rountree, it was at all times agreed and understood that they were to take effect only upon the execution, and delivery back to her, of notes secured by mortgages, etc. In other words, her testimony fully supports the theory of her bill as stated above, and in that testimony she is corroborated by John S. Collman, who took her acknowledgment to the deeds, Mrs. Broadway and Mrs. Lucy A. Prosser, who testified to a conversation between the parties, at the house of Mrs. Broadway, February 26, 1891, the deeds being taken there by them, but whether they had then been given to Mrs. Rountree is in dispute.

The testimony of these four witnesses strongly supports the theory, that whatever delivery of the deeds was made was upon the condition that they would only take effect upon the return of securities to Mrs. Smith. The evidence of appellants is to the effect that they were unconditionally delivered on the day of their date, February 14, but they admit that very soon after they were so delivered, at least as early as February 26, at Mrs. Broadway's, it was agreed that Mrs. Smith should have some security to protect her in the right to control the property. Speaking of the conversation at that time, Mrs. Rountree says: "I was willing. I used this expression: Anything any good lawyer would suggest I would be only too happy to carry out,—that it ought to be done." To the question, "Now, what were those securities to be for?" she answered, "In the event of my death

first, for Mrs. Smith, that she might not be dependent upon my heirs or Professor's heirs,—so that she could get her property back in case I died first." She also admits that it was understood the deeds were not to be recorded, and that the one for the twenty acres was recorded October 22, 1891, by the express consent of Mrs. Smith, because of a difficulty in regard to a ditch which other parties had dug on the land. Her language is, "She said I might put the deed on record." She also says, in answer to a question as to whether anything was said between herself and Mrs. Smith, after February 14, 1891, about selling any of the property: "We had agreed to sell the thirty, the proceeds first to pay Mrs. Smith's debts, second for the benefit of the family,—Professor, Mrs. Smith and myself. Mrs. Smith considered first,—her pleasure to be thought of first. If that wasn't enough to give her all the *fun* she wanted, the forty was to be sold. The twenty was to be mine absolutely."

It appears that on the 13th of November, 1891, the parties, Mrs. Smith and Mrs. Rountree, by appointment, met one Erastus C. Moderwell, a lawyer, and his brother, John B. Moderwell, a real estate agent, at the homestead, and it is insisted by appellants that by her own admissions, as shown by the Moderwells, Mrs. Smith had unconditionally parted with her title to the lands in question on the 14th of February, 1891. These witnesses do, in the first part of their testimony, convey the idea that Mrs. Smith not only admitted she had required no security whatever from Mrs. Rountree, but that she had never contemplated so doing. That part of their testimony is to the effect that the question of any sort of security to protect Mrs. Smith was first suggested by Erastus C. Moderwell at that time. When, however, their entire evidence is considered, it clearly shows that the subject had been under discussion between the parties, from time to time, before then, and different kinds of security suggested and talked of. That seems to have been the last

friendly meeting of the two ladies, and we regard what took place between them, touching the conveyances, of the first importance in determining their rights in this case.    Erastus C. Moderwell testified, that after he had insisted that Mrs. Smith should be protected by some agreement in writing, Mrs. Smith said: "Well, we did talk once of a trust deed, but Mr. Rountree said he didn't wish to sign a cut-throat mortgage, so I dropped that. Then I asked them to give me a quit-claim deed, but Mrs. Rountree wanted to consult an attorney, and he told her that it would nullify the deed to make a quit-claim back, so we dropped that.    I then suggested that she make a will, willing me her property back in case she should die. All the security that I wanted was, in case Mrs. Rountree should die before I did, as she is running back and forth on the trains, and may be killed any time.    If she should die, all this property would go to her heirs, and I would be left with nothing; but she has promised to make a will."    The witness further testified: "I said: 'Mrs. Smith, a will would be better than nothing; but let me say to you that a will is no security.    A person may make a will to-day, and to-morrow they may make a different will.'    Then Mrs. Rountree spoke up and says, 'Major Moderwell, I am willing to make any kind of security which you say is right and proper.'    I said, 'For the interest of both of you, you ought to make some sort of security.'    Mrs. Smith then said: 'Major Moderwell, I want you to examine the abstracts to all of my property. Look them over carefully, and see that everything is straight.'    She handed me a bunch of abstracts and said: "Here they are, all except the abstract of the home twenty. That is not completed yet.    There are two affidavits concerning whether certain parties were married when they made the deed.    I have sent for those affidavits and expect them in a few days.    When I get those affidavits I will have the abstract completed and will take it down to your office, and in the meantime I will study over this

matter and determine what kind of security we ought to have,' and I said, 'You certainly ought to.' I said : 'If I were in your place I would have a written contract, setting forth what Mrs. Rountree is to do for you. I would have it put on record, or, better than that, I think, would be for Mrs. Rountree to convey all this real estate to a trustee by a trust deed, and this trust deed should set forth fully all that they are to do for you. That would be the best way.' Then Mrs. Smith said, 'Well, we will make up our minds,—we will let you know soon.' Then I said, 'Now, what is the agreement between you parties, —what have you agreed to?' Mrs. Smith said : 'The agreement is, that Mrs. Rountree is to have this homestead, free and clear of all incumbrances. The thirty-acre tract shall be sold, and the money shall be used to pay my debts. After that, what is left shall be kept for the support of the family, and it is understood that I am to have whatever I wish. I am to have the best of clothes, —silk and satin, if I desire it. I am to be kept like a lady, and whatever luxuries I ask for I am to have.' Mrs. Rountree said : 'Yes, she is to be kept like a lady. That is our agreement. If it takes all the money, then we are next to sell the forty acres, and use it in the same way.' Then I said, 'What about the Englewood lots?' Mrs. Smith said : 'Mrs. Rountree and I have an understanding about them. She has agreed to do with them as I direct, and I am willing to trust her to carry it out.'"

The testimony of witness' brother, John B., is to the same effect. Both these witnesses, as well as Mrs. Rountree, testify that early in the interview Mrs. Smith delivered to Mrs. Rountree the two deeds of 1887, stating, in substance, that Mr. Rountree was ignorant of their existence, and she then gave them to her, as evidence that she had been uninfluenced in the purpose to give her all the property. They do not agree as to the language she used, but, as given by each of them, it shows that those deeds were produced and handed to Mrs. Rountree, not for the

purpose of making a double conveyance of the property described in them, but as evidence of her entire freedom from restraint or influence in making the deeds of 1891. It is also admitted by all parties that they were handed to her before final directions were given Major Moderwell in regard to security, as shown by his testimony above, and were therefore, if delivered at all, subject to the same conditions and instructions given as to those of 1891. Not long after the meeting of November 13 Mrs. Smith became dissatisfied with the arrangement, and refused to proceed with the business, demanding the return of her deeds.

We think it clear from the evidence in this record, even that produced by the appellants themselves, that it was never the intention of Mrs. Smith, or even of Mrs. Rountree, that the deeds in question should absolutely divest the former of the title to and control over her property, and unconditionally transfer it to the latter. Also, that it was well understood between the parties at the time the deeds were given to the grantee and consent given that the one might be recorded, that they were not thereby to be given effect, but that the title should remain subject to the control of the grantor. The fact that the deeds had been given to the grantee is a circumstance tending to prove delivery, and, unexplained, would be sufficient to vest the title in her, but it is not conclusive. "In undertaking to define what will constitute a delivery of a deed, it is said that it may be actual, that is, by doing something and saying nothing, or verbal, that is, by saying something and doing nothing, or it may be by both. But it must be by something answering to the one or the other or both these, and with an intent thereby to give effect to the deed." 3 Washburn on Real Prop. 286, and cases cited in note 1; 1 Devlin on Deeds, 262, and cases cited; *Byars* v. *Spencer*, 101 Ill. 429; *Blake* v. *Fash*, 44 id. 302; *Whitman* v. *Heneberry*, 73 id. 109.

From all the testimony, the conclusion is irresistible that up to and including the final directions to Moderwell, the purpose of Mrs. Smith to make a conveyance of her property to Mrs. Rountree was *in fieri*. That being true, Mrs. Smith had a clear legal right, with or without cause, to recede from her purpose at any time. That is to say, voluntary agreements are not enforcible in the courts, even though under seal. (Fry on Specific Per. 64; 1 Story's Eq. Jur. sec. 433.) If, after the deeds in question were executed and acknowledged, appellee had refused to deliver them, Mrs. Rountree would have been powerless to compel her. If the latter had tendered all the security asked and offered to perform any condition prescribed, still she would have had no standing in a court, either of law or equity, to compel a delivery of the deeds. Appellee might lawfully say, at any time before the completion of the gift : I have changed my mind, and will do with my own as I choose. On the same principle, even though the deeds were given to Mrs. Rountree and she allowed to place one of them on record, that being done merely in furtherance of an ultimate purpose to make the gift *provided* certain things were done by the donee, the giver might still withdraw the gift at any time before the performance on the part of the donee. In other words, if the deeds were given to Mrs. Rountree with the understanding and intention that they were not to take effect unless Mrs. Smith was made secure in the right to control the property while she lived, then the gift would only become executed upon the offering and *accepting* such security, and until that was done, appellee had the right to refuse to go on with the gift and insist upon the return of her deeds, even though Mrs. Rountree might have then been willing to give such security.

Under the issues and evidence in this case, the rights of the parties stood, on the 13th of November, 1891, precisely as though Mrs. Smith had never parted with the manual control of either of the five deeds. Accepting as

true the testimony of the Moderwells and of Mrs. Roun-tree herself, the final directions were then given by which the gift was to be consummated. Suppose the agreement then was just as Major Moderwell states it, can it be questioned that Mrs. Smith had a clear right to refuse to perform that agreement? This she did, and demanded a return of her deeds. The placing them on record after that, and asserting title under them, by Mrs. Rountree, was wrongful. It will, we think, be conceded, that if Mrs. Rountree had, on the allegations of her answer and the testimony introduced on her behalf, asked a court of equity to enforce the agreement or understanding testi-fied to by the Moderwells, she would have been success-fully met by the answer, courts do not enforce voluntary agreements. That which gave Mrs. Smith a standing in the court below was not a right to relief against her own voluntary act, but the recording of the deeds by Mrs. Rountree, and setting up a claim of title to the property under them, after a demand upon her for their return, thereby creating a cloud upon the title.

The decree of the circuit court is in harmony with the law and evidence of this case, as we understand it, and will be affirmed.

*Decree affirmed.*