FLORA I. ELLIOTT

*v.*

WILLIAM MURRAY *et al.*

*Opinion filed December 22, 1906—Rehearing denied Feb. 8, 1907.*

1. DEEDS—*an intent to give effect to deed is essential to a valid delivery.* The question whether there has been a valid delivery of a deed is a mixed question of law and fact, but there must in all cases be something, either acts or words, or both, which constitutes an intention to thereby give effect to the deed.

2. SAME—*when deed is not delivered.* A deed executed by a wife to her husband and handed to him, and placed by him, without recording, in a box which he thereafter kept in a bank, which deed covered property purchased the same day in the wife's name under a deed which was duly recorded, is not delivered so as to pass title, where it clearly appears the parties intended the deed to be destroyed if the wife survived the husband and to be recorded only in case the husband survived the wife.

3. SAME—*fact that deed is handed to grantee personally does not necessarily show delivery.* Giving the grantee of a deed possession thereof for the purpose of safe keeping does not pass title under the rule that a delivery in escrow cannot be made to the grantee, where it is the intention of the parties that the deed shall not become effective unless the grantor should die before the grantee.

APPEAL from the Circuit Court of DuPage county; the Hon. CHARLES A. BISHOP, Judge, presiding.

CHARLES H. BURRAS, and GEORGE E. HALEY, for appellant.

BOTSFORD, WAYNE & BOTSFORD, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill for the partition of certain farm property lying in DuPage county, Illinois, brought by the appellees in the circuit court of that county against the appellant and H. F. Lawrence and Freeman Starbuck, on the ninth day of March, 1904. Answers and replications were filed and the case was tried in open court, and a decree was entered finding the issues for the appellees in accordance with the prayer of the bill, from which decree Flora I. Elliott has prosecuted an appeal to this court.

The bill was in the usual form, and alleged that Mary L. Owen died on December 30, 1903, intestate, seized in fee simple of the farm in question; that she left Charles S. Owen, her husband, and the appellees, her brother and sister and nieces and nephews, her surviving as her sole and only heirs-at-law; that Charles S. Owen, the husband of the said Mary L. Owen, died intestate on January 1, 1904, seized in fee simple of the undivided one-half of said farm, leaving the appellant, Flora I. Elliott, his sister, him surviving as his sole and only heir-at-law, and prayed for a partition of said premises between appellees and said appellant. The bill further alleged that after the death of said Charles S. Owen, among his private papers was found an unrecorded deed from Mary L. Owen to said Charles S. Owen, bearing date November 16, 1900, purporting to convey to the said Charles S. Owen, in fee simple, said farm, under which deed the appellant claimed, by inheritance through Charles S. Owen, to be the absolute owner of the farm, and averred that said deed had never been delivered by said Mary L. Owen, during her lifetime, to Charles S. Owen, and prayed that the same might be canceled as a cloud upon their title.

The evidence introduced upon the trial showed that Mary L. and Charles S. Owen were husband and wife; that they had a son, William, who on December 30, 1903, was about the age of nine years; that Charles S. Owen was a physician by profession, and he and his wife had resided in Wheaton, DuPage county, since about the year 1885, where he had practiced medicine; that in the month of November, 1900, Charles S. Owen purchased of one Austin J. Ehle the farm in question for the sum of $11,400, and caused the title thereto to be conveyed by Ehle to Mary L. Owen and on the same day the deed from Ehle to Mary L. Owen to be recorded in the recorder's office of DuPage county; that Mary L. Owen had received, by inheritance, during her married life, a considerable amount of money from a deceased relative, which she had turned over to her husband, and that her money thus received and the money of Charles S. Owen jointly paid for said farm in about equal parts; that after the deal with Austin J. Ehle had been closed, Mary L. Owen not being present, Charles S. Owen said to Mr. E. J. Lewis, the real estate agent through whom the sale had been made, that he wanted him to make out a deed for the farm from Mary L. Owen to him, and that he would bring her in that afternoon and have her sign it. He said to Lewis that he wanted a deed from Mary L. Owen to himself; that the property was in his wife's name, and he thought it was better that way, because he had heart trouble and might drop off at any time, and that he wanted it in her name as she furnished part of the purchase money. The deed was prepared by Lewis, and in the afternoon of the day the farm was purchased Mary L. Owen and Charles S. Owen went to the office of Mr. Lewis and Mrs. Owen signed and acknowledged the deed, and Lewis placed thereon and canceled the necessary revenue stamps and handed the deed to Charles S. Owen, who put the same in a small tin box which he had under his arm. As to what occurred while they were in the office and after Mrs. Owen had signed the

deed, Lewis testified: "She came up there, and I said, 'You are a farmer's wife now.' She said, 'Yes, I can have my own butter and eggs and chickens, and I feel as though I had a home to stay in anyhow.' I said, 'The property is in your name.' She said, 'It ought to be when I paid a big price for it,' and he said, yes. He either said one-third or a half, I don't know which." Dr. and Mrs. Owen thereupon left the office, and after the death of both the deed was found in said tin box in the bank, which box had been kept in the bank for many years by Dr. Owen. Mr. Rathje, an attorney at law practicing his profession in Wheaton and who was interested in effecting a sale of the Austin J. Ehle farm to Dr. Owen, testified that after the parties had gone to the bank to get the money and had closed up the sale Dr. Owen and Lewis returned to Lewis' office, and Owen said to Lewis: "Now I want something else done. I now want a deed made out from my wife. Now, I don't want this for the purpose of being put on record, but I want it to put in the box in the bank, and I want to do this so as to save probate expenses, and in case my wife dies first I can put the deed on record. In case I die first all she has to do is to go to the box and destroy the deed and then she has got the farm in her name. Then there won't be any probate expenses." E. M. Reber, the mayor of the city of Wheaton and a friend of Dr. Owen, testified Owen told him, shortly after he bought the farm, he had two deeds for the farm; that the original deed was made out to his wife; that he had another deed to him from his wife in the box in the bank; that if Mrs. Owen died first then he would record the deed; if he died first all she would have to do was to destroy the deed. On the day the deed was made Dr. Owen caused the buildings on the farm to be insured in Mrs. Owen's name. There were some defects in the title, which Ehle had agreed to have cured and had arranged with Rathje to file a bill or bills for that purpose. Subsequent to the time the deeds were executed two bills in chancery

were filed in the circuit court of DuPage county, covering different portions of the land, in the name of Mary L. Owen,—one in partition and the other to remove a cloud. They both alleged the title to said premises to be in Mary L. Owen and the bill in the partition suit was sworn to by her. When the bills were prepared, ready for signature, they were delivered by Rathje to Dr. Owen for examination, and he was familiar with their contents before they were filed. Shortly after the deeds were made the farm was taken possession of by Dr. and Mrs. Owen, the doctor being the active spirit in its management and improvement, although Mrs. Owen was frequently at the farm from the time of its purchase up to the time of her death. On the 30th of December, 1903, Charles S. Owen and Mary L. Owen, accompanied by their son, were in Chicago and attended the Iroquois theatre on the afternoon of that day, where Mrs. Owen and her son, William, lost their lives, and Dr. Owen died two days later from injuries he sustained while in the theatre.

It is conceded upon this record that William Owen died prior to his mother. In other words, the bill avers Mary L. Owen died leaving her husband and her brother and sister and nieces and nephews, the appellees, as her sole heirs-at-law, and that proposition is not contested by the appellant; and it is agreed in the briefs filed by the respective parties that the only question presented upon this record for decision is, was the deed from Mary L. Owen to Charles S. Owen, bearing date November 16, 1900, delivered to Charles S. Owen during the lifetime of Mary L. Owen?—and that is the only question we shall consider on this appeal. If the deed was delivered, then Charles S. Owen died seized of the absolute title to the premises and the decree of the circuit court was erroneous; if, however, the deed was not delivered, then he died seized only of the undivided one-half of said farm which he inherited from his deceased wife and the decree of the circuit court is correct.

The question of delivery is a mixed question of law and fact, and it is held that the delivery of a deed may be made by acts alone,—that is, by doing something and saying nothing; or by words alone,—that is, by saying something and doing nothing; or it may be delivered by both acts and words. It must, however, be delivered by something answering to the one or the other, or both, and with the intent thereby to give effect to the deed. (*Rountree* v. *Smith*, 152 Ill. 493.) In the case at bar the deed was handed to Charles S. Owen by Mr. Lewis, and after it had been signed and acknowledged by Mrs. Owen was placed by Owen in his private box, where it remained until after his death. If these were the only facts which appeared in evidence bearing upon the question of delivery, it might well be held that the deed had been delivered. It appears, however, that the deed was made, not with the intention that it should immediately take effect and pass the title to said farm to Charles S. Owen, but that it should only take effect in case Charles S. Owen survived his wife, and in the event that his wife should survive him it was never to take effect but was to be destroyed. A deed must take effect immediately upon its execution and delivery to the grantee or it will not take effect at all. (*Wilson* v. *Wilson*, 158 Ill. 567; *Wilenou* v. *Handlon*, 207 ·id. 104.) We think it clear that the parties to this deed intended it to operate as a will, and that the possession of the deed by Charles S. Owen did not have the effect to vest the title to said farm in him.

It is urgèd, however, that the deed was delivered into the hands of Charles S. Owen, and it is said such delivery had the effect to invest him with the title to the premises regardless of the intention of the parties, on the ground that a deed cannot be transferred from the possession of the grantor to the grantee without vesting title in the grantee. We do not so understand the law. While a deed cannot be delivered to the grantee in escrow, numerous cases have been decided by this court where deeds have been held not to have been de-

livered so as to pass title although the possession of the deed passed from the grantor to the grantee. In *Rountree* v. *Smith, supra,* the deed was delivered by the grantor to the grantee and recorded with the knowledge and consent of the grantor, and yet it was held that it was not delivered to the grantee so as to vest her with the title to the premises described in the deed. (See, also, *Bovee* v. *Hinde,* 135 Ill. 137; *Hayes* v. *Boylan,* 141 id. 400; *Oliver* v. *Oliver,* 149 id. 542; *Wilson* v. *Wilson, supra; Hollenbeck* v. *Hollenbeck,* 185 Ill. 101.) In the *Wilson case* the deed was placed in the hands of one of the grantees with the understanding if the grantor did not call for it it was to be placed of record after his death. The court, on page 574, said: "The mere placing of the deed in the hands of one of the grantees did not, of itself, necessarily constitute a delivery. In such a case the inquiry is, what was the intention of the parties at the time?—and that intention, when ascertained, must govern." And in *Oliver* v. *Oliver, supra,* on page 547, it was said: "The fact that a grantee in a deed may, after the execution of the instrument, take it into his hands does not, of itself, establish a delivery." And in *Hollenbeck* v. *Hollenbeck, supra,* on page 103: "The mere placing of a deed in the hands of the grantee does not conclusively establish a delivery thereof, within the legal meaning of that word. Delivery is a question of intent, and depends upon whether the parties at the time meant it to be a delivery to take effect at once."

We think the evidence clearly shows no attempt was made to deliver the deed to Charles S. Owen in escrow, but that the deed was handed to him that it might be safely kept in the tin box in the bank. A delivery in escrow requires that the deed be absolutely delivered,—that is, it must pass beyond the dominion of the grantor. The delivery to a third party in escrow, in order that it may be sufficient to vest title in the grantee, must be such as to deprive the grantor of all control over the deed. (*Shults* v. *Shults,* 159 Ill.

225—8

654.) In *Wilson* v. *Wilson, supra,* on page 574, the court said: "It seems clear  *  *  *  there was no intention, at the time, to convey a present absolute title to the defendants, but the intention was that the deed should take effect at the grantor's death and vest the title in the defendants, provided he died without having recalled the deed. This was in no sense an attempt to deliver to the grantees in escrow, as contended by counsel for the defendants, but was merely a transfer of the possession of the deed to one of the grantees, the grantor at the time, however, reserving a future control over it. To constitute delivery of a deed it must clearly appear that it was the intention of the grantor that the deed should pass the title at the time and that he should lose all control over it. A deed for an interest in land must take effect upon its execution and delivery, or not at all."

The late case of *Russell* v. *Mitchell,* 223 Ill. 438, in its facts is very much like the case at bar. In that case Fannie Russell and Charles R. Russell, husband and wife, executed a deed to their son-in-law, John M. Mitchell, to premises the title of which rested in Mrs. Russell, and Mitchell and wife immediately executed a deed for the same premises to Charles R. Russell, which deeds were placed in a bank among the private papers of Charles R. Russell, where they remained until Mrs. Russell's death. The deeds were not recorded until after Mrs. Russell's death, and Russell said the deeds were made with the understanding if he died first they were to be destroyed, but if his wife died first they were to be recorded, and it was held that the transaction was testamentary in its character, and that the deeds were not so delivered as to vest the title to the premises therein described in Charles R. Russell.

We have examined this record with care, and are of the opinion the circuit court properly found, and so decreed, that the deed from Mary L. Owen to Charles S. Owen was not delivered during the lifetime of Mary L. Owen. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*