CHAUDOIR, Appellant, vs. WITT and others, Respondents.

*February 4—March 4, 1919.*
*October 11, 1919—February 10, 1920.*

*Deeds: Delivery to grantee on condition: Deed as testamentary document.*

1. A finding by the trial court that a deed executed by a grantor to a third person, who immediately deeded to the grantor's wife, was made with the intention of conveying the property described in the deeds, is sustained where the evidence discloses that the grantor, being ill, wanted the conveyance made because he might die, and both deeds were delivered by the third person to the wife, although it appears that the deeds were not to be recorded until after the grantor's death.

2. Neither the recovery of the grantor and his use of the property as his own until he died many years later, nor the belief of both husband and wife that the title was in the husband, changes the legal effect of the transaction.
3. The delivery of a deed in escrow or upon condition cannot be made to the grantee himself, and if so made it at once becomes absolute and divested of the supposed condition.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

This is an equitable action to set aside two quitclaim deeds on the ground that they were in fact testamentary documents and had never been delivered so as to become effective as deeds. The action was originally brought by one Rose Chaudoir, and upon her death revived in the name of her husband, the present plaintiff, as the executor and sole devisee under her will. Rose Chaudoir was the granddaughter of one Fred Witt and Lina Witt, his wife, both deceased, being the only child and heir at law of their deceased son, Fred Witt, Jr. Fred Witt, Sr., died intestate January 25, 1915, and left as his heirs at law his three surviving children, viz. *John Witt, Herman Witt,* and *Lina (Witt) Bukowsky,* and Rose Chaudoir, his said grandchild. Lina Witt died January 14, 1916, testate, devising the real estate involved in this action and described in the deeds in question to the defendants, the three surviving children above named. Lina Witt had no title to the real estate in question unless the two deeds attacked in this action were valid deeds. If they were valid the defendants own the property under the will; if they were not valid the plaintiff's testatrix owned a one-fourth interest in the property as the representative of her deceased father's rights.

The material facts are not seriously in dispute. Prior to the year 1871 Fred Witt, Sr., owned lots 16 and 17 in a certain block and subdivision in the city of Milwaukee. In June, 1871, he sold lot 17, but retained lot 16 (the lot in question here), upon which were located a store building in which he conducted a grocery store, a dwelling house in

which he and his family lived, and a pump shop. In November, 1879, Fred Witt, Sr., became seriously ill and sent for Frank Suelflow, a real-estate and insurance man with whom he did business, to draw some papers for him. Suelflow took one Damkoehler, a notary, with him, and they went to Witt's house. While there a quitclaim deed of lot 16 running to Suelflow was signed, witnessed, and acknowledged by Fred and Lina Witt, and a deed from Suelflow and wife to Lina Witt was drawn. This latter deed was taken by Suelflow to his own home or office and executed with due formalities, and then both deeds were taken by Suelflow to Witt's house and left with Lina Witt. These are the deeds attacked in this action. No consideration was given for either deed. Suelflow and Damkoehler were both examined on the trial and were the only witnesses giving any direct evidence as to the transaction. Neither of them pretended to remember the conversation that took place, but each stated in general terms his recollection of the matter. Damkoehler testified that, as he understood it, Witt was making the deeds because he wanted his wife to have the property in case he died at that time. Suelflow was examined more at length and stated that Witt summoned him to come to. the house; he (Witt) wanted papers made assigning it (the property) over to his wife in case he died; that it was understood that the deed should not be put on. record till after Witt's death; that Witt told him he wanted to deed his property over to his wife "because he was sick and might die, and in case he died it would be assigned over to his wife;" that the property should not be hers until after he was dead; that as long as he lived it was understood that the property was to be his; that he gave both deeds to Mrs. Witt because Mr. Witt was in bed; that he gave the quitclaim deed signed by himself to Mrs. Witt on the understanding that she should put it on record after Witt was dead, and for the purpose of conveying the property to her.

The defendant *Lina Bukowsky* testified that she remembered the occasion; that she was eight or nine years old at the time; that father was "pretty bad sick;" that both her father and her mother afterwards talked about the matter and said they had papers made at that time "because he was so sick; that he had papers made in case he would die it belong to her."

Fred Witt recovered from his illness, and apparently everything went along in the business and family as before until his death in 1915. In 1886 he repurchased lot 17 and the deed to himself was immediately recorded. Lot 16 was assessed in the name of Fred Witt year by year until after Mrs. Witt's death. The buildings were insured during the whole time in the name of Fred Witt as owner. In 1886 a mortgage on lot 16 for $600 was executed by him and his wife in which Fred Witt covenanted that he had good title to the lot and would warrant and defend the same. It appears also that Fred Witt made repairs and improvements on the buildings to the extent of some hundreds of dollars, paying for the same from his own money or from money borrowed by him for the purpose, and that he collected the rents accruing from those parts of the buildings which were rented. About six weeks before Fred Witt's death he said to a friend that he had made his will and left his property to his wife and that he made the will about thirty years ago or so. The two deeds attacked were preserved at the residence, and after Mr. Witt's death were found among his papers, which had been kept in a bureau drawer in a bedroom of the house. Mrs. Witt called in a business man, one Boorz, to look over the papers left by her husband and advise her what to do, and in the course of his examination the two deeds were found. They were subsequently recorded by a member of the Suelflow firm. Lina Witt on March 23, 1915, made and executed in due form a deed of the property to her children, the three defendants in this

action, but never delivered it. This deed was found by *Lina Bukowsky,* after her mother's death, among her papers and immediately recorded.

The trial court found that the two deeds attacked were both delivered with intent to pass title, but that the deed made by Lina Witt in March, 1915, was never delivered; and concluded that the defendants were the owners in fee of the property in question as devisees under the will of Lina Witt, and entered judgment dismissing the complaint on the merits, from which judgment the plaintiff appeals.

*Arnold C. Otto* of Milwaukee, for the appellant.

*Henry E. Fqelske* of Milwaukee, for the respondents.

The following opinion was filed March 4, 1919:

WINSLOW, C. J. There is but one serious question in this case, and that is the question whether the finding of the trial court to the effect that the deeds in question were delivered with intent to presently convey the property is sustained by the evidence, and we approach this question mindful of the principle that the finding must be sustained unless it be against the clear preponderance of the evidence.

The legal principles applicable to the case are comparatively simple and free from doubt and may be briefly recapitulated as follows: A deed is of no effect until delivered. The delivery may be by actual tradition of the document to the grantee or to some third person for him, or it may be by other acts deemed in law to amount to the same thing; but in either case there must be the intent presently to pass the title. The manual possession of the instrument by the grantee creates a presumption of delivery, which, however, may be overcome by evidence showing that the possession came about without intent to pass title but to accomplish some other purpose. A secret intent on the part of the grantor that title shall not pass when the deed is manually given into the possession of the grantee will not prevent the passing of title, but if the intent on both sides

be that the deed shall serve merely as a testamentary docu-
ment and is to remain subject to the grantor's control and
not take effect during his lifetime, it will not pass title even
though physically handed to the grantee. *Prutsman v.
Baker,* 30 Wis. 644; *Rogers v. Rogers,* 53 Wis. 36, 10
N. W. 2; *Curry v. Colburn,* 99 Wis. 319, 74 N. W. 778;
*Butts v. Richards,* 152 Wis. 318, 140 N. W. 1; *Zimmerman
v. Zimmerman,* 165 Wis. 146, 161 N. W. 369; *Wilson v.
Wilson,* 158 Ill. 567, 41 N. E. 1007; *Oswald v. Caldwell,*
225 Ill. 224, 80 N. E. 131; *Roup v. Roup,* 136 Mich. 385,
99 N. W. 389; *Rountree v. Smith,* 152 Ill. 493, 38 N. E.
680.

Careful study of the evidence in this case convinces us
that the idea of all the parties to the transaction was that the
deeds were to operate as testamentary documents only and
were to have no effect during Witt's lifetime.   It would
serve no good purpose to repeat the evidence in this opinion;
it will be found quite fully set forth in the statement of
facts.   It is sufficient now to say that not only the direct
evidence, but all of the significant circumstances surround-
ing the transaction and occurring since that time, confirm
the statement of Mr. Suelflow, namely, that the property
was not to be Mrs. Witt's until after he (Mr. Witt) was
dead, and was to be his as long as he lived.   We are con-
vinced that the findings to the effect that the deeds were
delivered with the intention of presently conveying the
property are contrary to the clear preponderance of the evi-
dence.

The respondents challenge the correctness of the court's
finding to the effect that the deed executed March 23, 1916,
by Carolina Witt, naming the defendants as grantees, was
never delivered to them.   In the view we have taken of the
case this question becomes immaterial, but in any event we
see no reason to doubt the correctness of the finding.   Some
questions are raised by the respondents relating to the prac-
tice adopted in the proceedings for revival of the action, but

we have been unable to see that the rulings were erroneous and it does not seem necessary to state the contention at length.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the plaintiff in accordance with this opinion.

The respondents moved for a rehearing.

In support of the motion there were briefs by *Henry E. Foelske,* attorney for respondents, and *Christian Doerfler,* of counsel, both of Milwaukee.

In opposition thereto there was a brief by *Arnold C. Otto* of Milwaukee, attorney for the appellant.

The motion was granted on May 27, 1919, and the cause was reargued October 11, 1919.

The following opinion was filed December 2, 1919:

WINSLOW, C. J.    The reargument has convinced us that we were in error in reversing the judgment in this case, and the former opinion must be considered as withdrawn and the judgment of reversal set aside.

The trial court's findings were that both deeds were delivered with the intention of conveying the property, but this court held that these findings were contrary to the clear preponderance of the evidence and that the evidence demonstrated that the deeds were understood by all parties to be testamentary documents only and were never delivered with intent that they should take effect as deeds.    We now think that this was an erroneous holding.    The only direct testimony as to what was done with the deeds after their execution was the testimony of Frank Suelflow, the real-estate man, the grantee named in the first deed.    He testified directly that Mr. Witt executed the first deed running to him (Suelflow) and gave it to him, and that he then had another deed made out signed and executed by himself and wife, and that he (Suelflow) gave both deeds to Mrs. Witt

for the purpose of conveying the property to her. No witness details the conversation which occurred on either occasion, but Suelflow says, and in this testimony is sustained by Damkoehler, that Witt wanted to deed his property to his wife because he was sick and he might die, and in case he died the property would be assigned to his wife, and that the deeds were not to be recorded until after his death. The appellant's proposition is in brief that this evidence last referred to overcomes the inference of delivery naturally to be drawn from the manual tradition of the deeds.

Mature consideration convinces us to the contrary. The conclusion rather is that the deeds were intended to be legally effective at once (in the sense of not being subject to revocation), but were expected not to pass the title until the happening of an outside event, namely, the death of the grantor; in other words, the grants were upon condition.

No court has more positively or consistently held that there cannot be a conditional delivery of a deed to the grantee himself than this court. In *Hinchliff v. Hinman,* 18 Wis. 130, it was held that if a deed is executed and delivered with intent to pass the estate to the grantee it must so operate though both parties supposed that it would not take effect until recorded and also supposed that while unrecorded the grantor might control or revoke it. In *Lowber v. Connit,* 36 Wis. 176, it was said that if a grantor of land does not intend his deed to take effect until some condition is performed he must keep it to himself or leave it in escrow with a stranger and not deliver it to the grantee. In *Prutsman v. Baker,* 30 Wis. 644, the subject of conditional delivery of a deed was discussed by Chief Justice DIXON, who said: "A conditional delivery is and can *only* be made by placing the deed in the *hands of a third person,* to be kept by him until the performance of some condition or conditions by the grantee or some one else, or until the happening of some event" when it is to be delivered by the depositary to the grantee. These cases were followed in *Rogers*

*v. Rogers,* 53 Wis. 36,.10 N. W. 2, in which it was held that if a grantor did not wish his deed to go into effect at once he should keep it to himself or place it in the hands of a stranger and not deliver it to the grantee. And these cases are in accord with the general current of authority to the effect that a delivery in escrow or upon conditions cannot be made to the grantee himself, and that such a delivery at once becomes absolute and the supposed conditions are of no effect. 18 Corp. Jur. p. 211; 16 Cyc. 571; 1 Warvelle, Vendors, p. 517; *Worrall v. Munn,* 5 N. Y. 229; *Braman v. Bingham,* 26 N. Y. 483; *Wallace v. Berdell,* 97 N. Y. 13; *Blewitt v. Boorem,* 142 N. Y. 357, 37 N. E. 119; *Hamlin v. Hamlin,* 192 N. Y. 164, 84 N. E. 805; *Hovey v. Hovey,* 170 N. Y. Supp. 822, affirmed 183 App. Div. 184; *Beers v. Beers,* 22 Mich. 42; *Wipfler v. Wipfler,* 153 Mich. 18, 116 N. W. 544; *Fairbanks v. Metcalf,* 8 Mass. 230; *Fletcher v. Shepherd,* 174 Ill. 262,·51 N. E. 212; *Blake v. Ogden,* 223 Ill. 204, 79 N. E. 68.

The reason of the rule is quite obvious. If it were possible to prove in every case that parol conditions were attached to the formal delivery of a deed there would be no safety in accepting a deed. Titles would be open to attack at all times, and the practical result would be to defeat the solemn provisions of a duly·executed and formally delivered deed by parol testimony. There were circumstances in the present case tending quite persuasively to show that both Mr. and Mrs. Witt supposed that the title remained in Mr. Witt during his life, but of course their erroneous impression as to the legal effect of the transaction could not control that effect. If the law is, as we now hold, that such conditional delivery made to the grantee at once becomes an absolute delivery freed of the supposed conditions, then the controversy here is closed, because the title at once passed in spite of the idea of the parties that it was not to pass until after Mr. Witt's death.

There are authorities justifying more or less satisfactorily our former holding, some of which will be found cited

in the former opinion.   It will be found, however, on close examination of most of these cases that they are cases where, although the grantee had manual possession of the deed, it affirmatively appeared that the grantor retained control over it.   Conceding in the present case that there is some testimony tending to show that the grantor expected to retain control over the deeds, it certainly cannot be said to be sufficient to overturn the findings of the trial court that the deeds were delivered with intent to convey the property.   These findings are founded on sufficient affirmative evidence, are not against the clear preponderance of the evidence, and hence must stand.

*By the Court.*—Judgment affirmed.

SIEBECKER and VINJE, JJ., dissent.

A motion by appellant for a rehearing and for a modification of the mandate as to costs, made December 31, 1919, was denied, with $25 costs, on February 10, 1920.