PAUL R. BUCHWALD, JR., *v.* MORITZ G. BUCHWALD ET AL.

[No. 58, April Term, 1938.]

116

*Decided June 14th, 1938.*

 

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*James E. Godwin,* for the appellant.

*Charles W. Main,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The question submitted by this appeal is whether a deed, manually and physically transferred by the grantor to the grantee subject to the conditions (1) that it be not recorded during the grantor's lifetime, and (2) that the grantor might, if the grantee predeceased him, retake and cancel it, passed to the grantee an indefeasible title to the land described therein.

That question arises in this way: Paul R. Buchwald, Sr., owned property known as Nos. 4603, 4605 and 4607 Harford Road, in Baltimore. On May 22nd, 1935, he signed, sealed and acknowledged a deed conveying that property to his son, Paul R. Buchwald, Jr. On the following morning he handed that deed to the grantee under circumstances shown by the following excerpts from his testimony in this case:

"The next morning when I got to the store—when you opened the store a bell rings and my father came out and he said, 'Wait a minute, Paul, I have something for you.' He goes in the house and comes back in a few minutes and hands me the deed. He said, 'Now, put that away.' So I put it in my drawer of the office safe. Q. I ask you to look at this paper, which is marked Defendant's Exhibit No. 1, and say whether that is the paper? A. That is the paper. Q. What did you do with that after he gave it to you? A. I put it in my drawer in the office safe. Q. What do you mean by your drawer? A. There are two drawers in there. One drawer I kept some of my papers in it, my personal papers. Q. What was the other drawer used for? A. That was some of the corporation papers. Q. Does your father have a safe? A. No, sir. There was another safe in the house, but that belonged to the corporation, too. Q. Did your father use that? A. Yes, he ordinarily used that one. Q. Now, then, you kept this in this place until when? A. Until the day after my father's death. * * * Q. Now, Mr. Buchwald, why haven't you recorded this deed before your father's death? A. Well, my father did not want me to have it recorded. In the event that

anything happened to me it would make it hard for him to try to have it changed, so he said, 'You put it in your safe, in case anything happens to you I can get hold of it so that I don't have to go to court to have that changed. Q. There was no question about it being conveyed or handed to you for your use? A. No, sir. Q. And only in case of your death—— A. That is right. * * * Q. What was your understanding of holding that deed until after he died? A. My father had no regard to any of his daughters-in-law. Q. Your wife too? A. Absolutely. So he told me to put the deed away in such a way that she could not get hold of it, so in the event of my death he could change it without having to go to her. * * * Q. All he wanted to do was, as you explained, if you died, then he could get the deed destroyed? A. That is right. Q. Another explanation was that he was afraid if you died your wife would give him trouble? A. That is right. Q. Which do you mean was the explanation, your wife or the other one? A. My wife. That is the reason he insisted on having the old deed back. Mr. Morgan kept the old deed which was from the corporation to my father. When Mr. Morgan brought out this deed that he acknowledged to me, he did not bring this deed along. Then he said, 'You insist that you get that deed back' Now my father had that deed and I had the deed from my father to myself. In the event of my death, my father could have destroyed that one deed and still had the deed from the corporation to him. Q. Were any taxes paid on the property after that deed was given to you? A. We paid taxes in June, I believe it was. Q. Who paid them? A. The corporation. * * * Q. You have testified that the day after this deed was made that your father handed it to you? A. That is right. Q. But that he said he did not want you to put it on record until after his death? A. That is right. Q. Because if you should predecease him, that is, die before he did, he was going to destroy it and hold the property under his old deed? A. That is right. But Mr. Main, you did not finish why it was said. Q. Well, go

ahead? A. I also explained to you that my father had no regard for any of his daughters-in-law. Q. What was your understanding with your father about the deed? A. He would have had to take it out of my drawer in the safe. * * * (The Court) But the witness has testified. I think the witness could answer that question. The question is what was his understanding about the deed and he said the deed was conveyed to him with a certain understanding. (The Witness) It was only in the event of my death."

Following his father's death, Paul R. Buchwald, Jr., had the deed recorded, and in October, 1935, Moritz G. Buchwald and Johannes E. Buchwald, sons of Paul R. Buchwald, Sr., filed the original bill of complaint in this case. Later that bill was amended, and in the amended bill the complainants charged (1) That Paul R. Buchwald, Sr., left to survive him three sons, Moritz, Johannes and Paul, one daughter, Louise Johanna, now known as Sister Clementine, and four grandchildren, children of a deceased son, Bruno A. Buchwald, (2) that at the time the deed was executed the grantor was mentally incapable of executing a valid deed or contract, (3) that its execution was procured by fraud and undue influence exercised and practiced upon the grantor by the grantee, and (4) that the deed remained in the safe deposit box of the grantor and subject to his control until his death. The defendant answered, denied the charges of fraud, undue influence, and mental incapacity, and denied that the deed had remained in the grantor's safe deposit box and under his control during his lifetime, but alleged that it had been delivered to the grantee and was under his control and in his possession from the day after it had been executed until the death of the grantor.

At the trial of the case no serious effort was made to prove the charges of fraud, undue influence, and lack of sufficient mental capacity to execute a valid deed, and since they have not been pressed here they may be disregarded. So that the only question in the case is, Was there a sufficient delivery of the deed by the grantor?

The chancellor found that there had been no effective delivery of the deed, that it was ineffective as a testament, and was therefore void, and decreed accordingly. From that decree the grantee appealed.

There is of course no such thing as delivery of a deed of land to the grantee in escrow. To constitute an escrow the delivery must be to a third person. 21 *C. J.* 873, 874, and cases cited in note 6, 8 *R. C. L.* 753. "A deed absolute on its face cannot be deposited by the grantor with the grantee therein named to be ·held by the latter in escrow, such a deposit becomes a delivery which operates to vest absolute title in the grantee immediately." 21 *C. J.* 874. Neither can there be a valid delivery of a deed to the grantee named therein upon a condition not expressed in the instrument. 8 *R. C. L.* 985; *Wilson v. Wilson,* 158 Ill. 567, 41 N. E. 1007; *Phelps v. Pratt,* 225 Ill. 85, 80 N. E. 69; 18 *C. J.* 211.

The word "delivery" in the law of deeds, however, imports more than mere manual tradition; it means tradition with an intent that the deed shall at once pass the title to the grantee. 8 *R. C. L.* 978; 18 *C. J.* 196 *et seq.; Devlin on Deeds,* sec. 262. Manual tradition from the grantor to the grantee is strong, but not conclusive, evidence of such an intention, and may be overcome by evidence sufficient to establish the fact that the tradition was not intended to operate as a delivery. Manual tradition is not always necessary to delivery nor is it in all cases sufficient to prove delivery. (*Ibid;* 18 *C. J.* 197, 202), for, as stated in an annotation to *Hotaling v. Hotaling,* 56 A. L. R. 746, "Manual tradition of a deed is not enough, for the transfer of possession must be with the intent of presently passing title, and must not be hampered by the reservation of any right of revocation or recall." And intent and an act must concur to constitute delivery, an intent that the deed shall "presently become operative and effectual," and a transfer, actual or constructive, of the deed to the grantee. 8 *R. C. L.* 981. If either is wanting there is no delivery. If a grantor were to hand to the grantee named therein

a deed saying "hand this deed to my secretary, and tell him to place it in my safe," and the grantee agreed there would be no delivery because there would be no intent that it should become at once operative and effective, whereas if he merely said "Here is your deed," the delivery would be complete. While there is much conflict and confusion and some hair splitting in the cases, in distinguishing facts which require the application of the rule that a deed may not be delivered to the grantee in escrow and that parol evidence is inadmissible to prove a conditional delivery to a grantee where the condition is not expressed in the instrument, from facts justifying the application of the rule that there can be no delivery unless the grantor so intends, there seems to be a common accord upon the principle itself, that both an intent and an act are essential to a valid delivery, and cases illustrating it are not wanting. 56 *A. L. R.* 746.

In *Chaudoir v. Witt,* 170 Wis. 556, 170 N. W. 932, 174 N. W. 925, Fred Witt, Sr., owned certain property in Milwaukee which he wished his wife to have in case of his death. To effect that purpose he had a deed drawn from himself to a scrivener and a deed from the scrivener to Lina Witt, the grantor's wife. The scrivener delivered both deeds to the grantee, Lina Witt, upon the understanding that they should not be recorded until after Witt's death and that until he died the property would be held by Witt. After his death devisees of Mrs. Witt asserted title to the property, but one of Witt's heirs resisted the claim on the ground that the deeds had never been delivered. In holding that there had been no delivery the court there said: "A deed is of no effect until delivered; the delivery may be by actual tradition of the document to the grantee or to some third person for him, or it may be by other acts deemed in law to amount to the same thing, but in either case there must be the intent presently to pass the title; the manual possession of the instrument by the grantee creates a presumption of delivery, which, however, may be over-

come by evidence showing that the possession came about without intent to pass title but to accomplish some other purpose; a secret intent on the part of the grantor that title shall not pass when the deed is manually given into the possession of the grantee, will not prevent the passing of title, but, if the intent on both sides be that the deed shall serve merely as a testamentary document and is to remain subject to the grantor's control and not take effect during his lifetime, it will not pass title, even though physically handed to the grantee. *Prutsman v. Baker*, 30 Wis. 644; *Rogers v. Rogers*, 53 Wis. 36, 10 N. W. 2; *Curry v. Colburn*, 99 Wis. 319, 74 N. W. 778; *Butts v. Richards*, 152 Wis. 318, 140 N. W. 1; *Zimmerman v. Zimmerman*, 165 Wis. 146, 161 N. W. 369; *Wilson v. Wilson*, 158 Ill. 567, 41 N. E. 1007; *Oswald v. Caldwell*, 225 Ill. 224, 80 N. E. 131; *Roup v. Roup*, 136 Mich. 385, 99 N. W. 389; *Rountree v. Smith*, 152 Ill. 493, 38 N. E. 680."

In *Gaylord v. Gaylord*, 150 N. C. 222, 63 S. E. 1028, where a deed from one brother to another was given to the grantee to hold so that the grantor's wife could establish no claim against the property granted, but to be returned to the grantor on demand, it was held that there was no delivery.

In *Wilson v. Wilson*, 158 Ill. 567, 41 N. E. 1007, it appeared that a grantor placed in the hands of a grantee a deed to property therein described upon the understanding that it would be returned to him upon demand, but that if he did not call for it she might have it recorded. In considering whether that was a delivery, the court said: "In other words, there was no intention, at the time, to convey a present, absolute title to the defendants, but the intention was that the deed should take effect at the grantor's death, and vest the title in the defendants, provided he died without having recalled the deed. There was in no sense an attempt to deliver to the grantees in escrow, as contended by counsel for the defendants, but merely a transfer of the possession of the deed to one of the grantees; the grantor at the

time, however, reserving a future control over it. To constitute delivery of a deed, it must clearly appear that it was the intention of the grantor that the deed should pass the title at the time, and that he should lose all control over it." See, also, *Elliott v. Murray,* 225 Ill. 107, 80 N. E. 77, 79; *Phelps v. Pratt,* 225 Ill. 85, 80 N. E. 69; *Taylor v. Taylor,* 79 Colo. 487, 247 P. 174.

In *Coles v. Belford,* 289 Mo. 97, 232 S. W. 728, 731, the grantor gave to the grantee named therein a deed, saying, "You take this and put it in your box and keep it and whenever anything happens you send it to Springfield, Mo., and have it recorded." Referring to that the court said: "True, by this delivery it may be said that Mrs. Phelps parted with dominion over the deed. However, when she said 'whenever anything happens you send it to Springfield, Mo., and have it recorded,' that language indicates that it was her intention that the deed was not to become operative until her death. * * * Accordingly, upon authority of the adjudicated cases, the instrument was testamentary in character, did not pass a present interest in the property to the grantees, and hence was not good as a deed, notwithstanding the intention of Mrs. Phelps that it should take effect at her death."

In *Bunn v. Stewart,* 183 Mo. 375, 81 S. W. 1091, a grantor during divorce proceedings placed in the hands of two of his grandchildren, grantees named therein, deeds to certain property upon the express agreement that the deeds should not be recorded but returned on demand. It was held there was no delivery. See, also, *Joslin v. Goddard,* 187 Mass. 165, 72 N. E. 948; *Kenney v. Parks,* 137 Cal. 527, 70 P. 556.

Reference is made to a statement in Mr. Tiffany's work on real property that "a conditional delivery must be to some person other than the grantee," because if the grantor "intending to make a conditional delivery, hands the instrument to the grantee, there is necessarily an absolute delivery," (*Tiffany on Real Property,* sec. 462), as though it were in conflict with the rule that

intention plus tradition is essential to delivery. But in that statement Mr. Tiffany is dealing with a valid delivery to which a parol condition not expressed in the instrument has been attached. But that contention ignores the distinction between a conditional delivery, and a physical transfer of the instrument with no intention that it shall become in the hands of the grantee immediately operative, which is apparent in section 461 of the same work, where the author says: "Such a transfer to a third person, if not made with the intention that the instrument shall be legally operative, does not constitute a delivery; nor does such a transfer to the grantee himself, if the transfer is not with such intention, but is for another purpose as, for instance, to enable him to examine the instrument. * * * It being conceded that even a voluntary transfer of the instrument by the grantor to the grantee does not involve a delivery if not with the intention that the instrument shall be legally operative, it necessarily follows that the instrument cannot be regarded as having been delivered merely because the grantee has acquired possession thereof without the grantor's consent."

While there are no Maryland cases precisely in point, the rule that a mere manual transfer of a deed to the grantee is not conclusive evidence of delivery is consistent with the reasoning in *Krach v. Carson,* 150 Md. 659, 662, 133 A. 306; *Hearn v. Purnell,* 110 Md. 458, 465, 72 A. 906; *Renehan v. McAvoy,* 116 Md. 356, 361, 81 A. 586.

And such cases as *Hamlin v. Hamlin,* 192 N. Y. 164, 84 N. E. 805, are not necessarily in conflict with the rule. In that case a wife had executed deeds conveying land to her husband which were found to have been in his possession unrecorded at his death. There was an effort to show that he had been given the deeds temporarily for business purposes. It was held that there had been a delivery, but the court said: "I am unable to perceive how the case of *Ten Eyck v. Whitbeck* [156 N. Y. 341, 50 N. E. 963] has any especial application

to the plaintiff's case. There the title to the land was attacked upon the ground that the deed, under which the defendant claimed title, was obtained from the grantor through fraud, conspiracy, and undue influence. Judge Martin in his opinion points out that the delivery of a deed is essential to the transfer of title, and says that the question of delivery, 'involving, as it does, acceptance, is always one of intention, and where there is a conflict in the evidence, it becomes a question of fact, to be determined by the jury.' In this statement, and in observing that the presumption of delivery and of acceptance is one that must yield to opposing evidence, he only states the general rule applicable to all cases where those facts are to be established, in order that the deed in dispute may be held to have been an effective conveyance. But, in truth, the argument is not, now, that there was no actual delivery nor acceptance of the deeds; as I apprehend it, it is that the delivery was inoperative, by reason of 'terms and conditions thereafter to be determined,' to convey an absolute title."

It is also settled that a defective deed cannot operate as a will unless it meets the requirements imposed by the statute for the valid execution of a will, (*Renehan v. McAvoy, supra*), nor is there any support for the suggestion that, even if there was no delivery, such a deed may operate as a declaration of trust. 8 *R. C. L.* 974.

In this case the grantee himself admits that he received the deed for safekeeping and that he agreed not to record it during his father's lifetime; that at his father's request he put it in his safe, which was also the corporation's safe, so that if anything happened to the son the father could get the deed and destroy it; that the purpose of that arrangement was to prevent the son's wife from claiming an interest in the property in the event that Paul predeceased his father. In other words, the grantor did not intend that the deed should become presently operative, or that it should be presently used by the son, for that would have defeated his wish that the son's wife should have no interest in the prop-

erty if the son predeceased him. It was merely intrusted to the son for safekeeping, to become operative only in the event that the father predeceased the son, that is, it was not a present grant, but an attempted testamentary disposition of the grantor's property. There was therefore no effective delivery, and since the instrument is not executed in conformity with the testamentary laws of the state, it is not valid either as a deed or as a will. *Hotaling v. Hotaling, supra,* 193 Cal. 368, 224 P. 455; *Phelps v. Pratt,* 225 Ill. 85, 80 N. E. 69.

There are, it is true, cases which hold that the manual transfer of a deed to the grantee, named therein upon an express agreement that the grantee would not record it, and that if the grantee predeceased the grantor the deed should be destroyed, constitutes an absolute delivery and passes title to the land described in the deed at once to the grantee. *Tabor v. Tabor,* 136 Mich. 255, 99 N. W. 4; *Dyer v. Skadan,* 128 Mich. 348, 87 N. W. 277. The effect of that view is to apply the rule forbidding delivery to a grantee in escrow in its strictest form to the manual tradition of a deed to a grantee without regard to the grantor's intent in making the transfer, and to that extent it is inconsistent with the principle that there can be no delivery without an intention to deliver. For the reasons stated, and upon the authorities cited, we are not able to accept that view.

The decree appealed from must therefore be affirmed.

*Decree affirmed, with costs.*